Present:  Carrico, C.J., Lacy, Hassell, Keenan, Koontz, and
Kinser, JJ., and Compton, S.J.

COMMONWEALTH OF VIRGINIA

v. Record No. 992706   OPINION BY JUSTICE CYNTHIA D. KINSER
                                        November 3, 2000
CHRISTOPHER LYANCE CHATMAN

FROM THE COURT OF APPEALS OF VIRGINIA


In this appeal, we address a question of first
impression in this Commonwealth, whether a 13-year-old
juvenile has either a constitutional or statutory right to
assert an insanity defense at the adjudicatory phase of a
juvenile delinquency proceeding.  Because we conclude that a
juvenile does not have that right in such proceedings under
either the Due Process Clause of the Fourteenth Amendment or
the statutes of this Commonwealth, we will reverse the
judgment of the Court of Appeals holding that the
availability of the insanity defense in such juvenile
proceedings is essential to due process.

MATERIAL PROCEEDINGS

Christopher Lyance Chatman was charged with delinquency
in a petition alleging that he had committed the crime of
malicious wounding in violation of Code § 18.2-51.  The City
of Emporia Juvenile and Domestic Relations District Court
adjudged Chatman a delinquent upon finding that he had
committed unlawful wounding.  Chatman appealed that finding

to the Circuit Court of Greensville County. See Code § 16.1-296.

In the circuit court, Chatman moved for a psychiatric evaluation to determine whether he was insane at the time of the offense. In support of his motion, Chatman asserted that he "has a long history of mental illness and seeks a psychiatric evaluation to establish an insanity defense." He alleged that on the day of the offense, a medical doctor examined him and opined that Chatman displayed homicidal ideations. Chatman further alleged that a licensed clinical psychologist evaluated him two days after the offense and diagnosed a "Schizophreniform Disorder."[1]

At a hearing on Chatman's motion, the Commonwealth did not contest that Chatman's alleged mental problems would entitle him to a psychiatric evaluation to determine his sanity at the time of the offense if he were an adult.[2] However, the Commonwealth argued that, as a 13-year-old juvenile, Chatman had neither a due process right under the Fourteenth Amendment of the Constitution of the United States nor a statutory right to assert an insanity defense at the

_____

[1] Other than Chatman's allegations, the record does not contain any reports from those mental health evaluators.

[2] The Commonwealth acknowledges this fact on brief before this Court.

2

adjudicatory phase of a juvenile delinquency proceeding.  The

circuit court agreed with the Commonwealth and denied the

motion.  After a bench trial on the petition charging

delinquency, the court, in an amended order, found "the

defendant guilty of the delinquency charge of unlawful

wounding" and committed Chatman "to the Department of Youth

and Family Services . . . ."[3]

Chatman then petitioned the Court of Appeals for an

appeal from the circuit court's judgment.  The Court of

Appeals awarded the appeal, reversed the judgment of the

circuit court, and remanded the case for a determination of

whether Chatman is entitled to a mental health evaluation

pursuant to Code § 19.2-169.5 and for further proceedings if

the Commonwealth be so advised.  Chatman v. Commonwealth, 30

Va. App. 593, 601, 518 S.E.2d 847, 851 (1999).  The Court of

Appeals acknowledged that the provisions of the Code

pertaining to the juvenile and domestic relations district

courts do not expressly provide for or prohibit an insanity

defense by a juvenile at an adjudicatory hearing.  However,

the court found "no reasonable basis for concluding that an

insanity defense is unavailable to a juvenile at a proceeding

_____

[3] The circuit court incorrectly referred to the "Department of Juvenile Justice" under its former name of "Department of Youth and Family Services."  See Code § 16.1-228.

3

to adjudicate him or her delinquent as it would be to an adult defendant in a criminal trial." Id. The Court of Appeals concluded that "the right to assert an insanity defense is an essential of 'due process and fair treatment' which is required at a juvenile delinquency adjudication." Id.

The Commonwealth petitioned the Court of Appeals for rehearing and also requested a rehearing en banc. The Court of Appeals denied both petitions, and we awarded the Commonwealth this appeal.

## FACTS

Since the facts of the underlying offense are not essential to the issue on appeal, we will not discuss them in detail. Both Chatman, who was 13 years old at the time of the offense, and the victim were students in a public school special education program. They had exchanged angry words at school on January 22, 1997, and after school rode home together in a school vehicle. When the vehicle stopped at Chatman's house for him to exit, the victim also got out of the vehicle. Chatman then pulled out a knife and stabbed the victim in the shoulder.

## ANAYLSIS

Although the Court of Appeals based its decision on the Due Process Clause of the Fourteenth Amendment, the

Commonwealth argues that Chatman has neither a constitutional nor a statutory right to raise an insanity defense. These are the two sources upon which Chatman relies to assert that he has such a right. Consequently, we will address the arguments seriatim.

In Virginia, we have recognized the defense of insanity as set forth in M'Naghten's Case, 10 Cl. and F. 200, 8 Eng. Rep. 718 (H.L. 1843), since 1871. Price v. Commonwealth, 228 Va. 452, 459, 323 S.E.2d 106, 110 (1984); Dejarnette v. Commonwealth, 75 Va. 867, 876-78 (1881); Boswell v. Commonwealth, 61 Va. (20 Gratt.) 860, 874-76 (1871). Under the M'Naghten definition, an accused must establish that he or she did not know the difference between right and wrong, or that he or she did not understand the nature and consequences of the acts in question. Price, 228 Va. at 457-58, 323 S.E.2d at 108-09. If a defendant relies on the defense of insanity, the burden rests on the defendant "to prove to the satisfaction of the jury" that he or she was insane at the time of the offense. Thompson v. Commonwealth, 193 Va. 704, 711, 70 S.E.2d 284, 288 (1952).

Chatman asserts that he has a right under the Due Process Clause of the Fourteenth Amendment to assert this insanity defense. Relying on the decisions of the Supreme Court in In re Gault, 387 U.S. 1 (1967), and In re Winship,

5

397 U.S. 358 (1970), Chatman argues that "the right to present an insanity defense goes to fundamental due process fairness and is not one of those rights that can be withheld from him."

The Commonwealth, however, disagrees and argues that, since the Constitution does not require states to recognize an insanity defense for adults charged with committing criminal acts, see Medina v. California, 505 U.S. 437, (1992); Powell v. Texas, 392 U.S. 514, (1968) (plurality opinion), it follows that a juvenile likewise does not have a right under the Due Process Clause to assert such a defense in a delinquency proceeding. The Commonwealth contends that, even if the insanity defense were constitutionally guaranteed in adult criminal trials, the right to raise the defense would nonetheless still not apply in juvenile delinquency proceedings. Continuing, the Commonwealth asserts that, in contrast to those rights that were afforded to juveniles in Gault and Winship, the insanity defense is not fundamental to the factfinding process because sanity, unlike mens rea, is not an element of the offense. We agree with the Commonwealth's position.

The question in Powell was whether a conviction for public drunkenness violates the Cruel and Unusual Punishment Clause of the Eighth Amendment. In analyzing that question,

6

the plurality's opinion addressed the role of the states vis-a-vis the Supreme Court in developing common law concepts to assess an individual's accountability for criminal acts:

> The doctrines of actus reus, mens rea, insanity, mistake, justification, and duress have historically provided the tools for a constantly shifting adjustment of the tension between the evolving aims of the criminal law and changing religious, moral, philosophical, and medical views of the nature of man. This process of adjustment has always been thought to be the province of the States.
>
> Nothing could be less fruitful than for this Court to be impelled into defining some sort of insanity test in constitutional terms. . . . If a person in the 'condition' of being a chronic alcoholic cannot be criminally punished as a constitutional matter for being drunk in public, it would seem to follow that a person who contends that, in terms of one test, 'his unlawful act was the product of mental disease or mental defect,' would state an issue of constitutional dimension with regard to his criminal responsibility had he been tried under some different and perhaps lesser standard, e.g., the right-wrong test of M'Naghten's Case.

392 U.S. at 536 (citation omitted). Twenty-four years later in Medina, the view expressed in Powell concerning the role of the states in developing certain doctrines was expressed more succinctly with regard to the insanity defense. The Court in Medina stated, "while the Due Process Clause affords an incompetent defendant the right not to be tried, we have not said that the Constitution requires the States to recognize the insanity defense." 505 U.S. at 449 (citations omitted) (citing Powell, 392 U.S. at 536-37); accord Golden v. State, 21 S.W.3d 801, 803 (Ark. 2000) (recognizing that,

7

under Medina, there is no constitutional right to raise insanity defense; thus defendant may assert such defense only if provided by statute).[4]

The Court of Appeals did not discuss the decisions in Powell or Medina.[5] Nor did it acknowledge the fact that the Supreme Court has never held that the Due Process Clause requires states to recognize the defense of insanity for an adult accused of committing a crime. Yet, in Gault and Winship, the rights that were afforded to juveniles under the Due Process Clause, i.e., adequate written notice; advice concerning the right to counsel, retained or appointed; the right to confront evidence and to cross-examine witnesses; the privilege against self-incrimination; and the requirement of proof beyond a reasonable doubt, were rights that were unquestionably available to adults in criminal proceedings. Neither the Court of Appeals nor Chatman has explained why a 13-year-old juvenile should be granted a right under the Due

_____

[4] However, the Supreme Court has held that an incompetent defendant has a right under the Due Process Clause not to be tried. Drope v. Missouri, 420 U.S. 162, 172-73 (1975); Pate v. Robinson, 383 U.S. 375, 386 (1966). The General Assembly has established a procedure to determine if a juvenile is unable to understand the pending proceedings or to assist an attorney in a defense. Code §§ 16.1-356 through -361.

[5] Similarly, the cases cited by the Court of Appeals from states that have held that a juvenile has a right under the Due Process Clause to assert an insanity defense at an

8

Process Clause in a proceeding to adjudicate delinquency when that right is not constitutionally mandated for adults in criminal proceedings to adjudicate their guilt or innocence.[6]

The plurality in Powell recognized the difficulties in elevating the opportunity to assert an insanity defense to a right of constitutional dimensions.  Not all states that allow a defendant to raise an insanity defense utilize the M'Naghten test for insanity.  See, e.g., Hart v. State, 702 P.2d 651, 657-58 (Alaska Ct. App. 1985); State v. Wilson, 700 A.2d 633, 638 (Conn. 1997); State v. Cowan, 861 P.2d 884, 888-89 (Mont. 1993), cert. denied, 511 U.S. 1005 (1994). Thus, if due process includes the right to assert the defense of insanity, the Supreme Court would "be impelled into defining some sort of insanity test in constitutional terms." Powell, 392 U.S. at 536.  But, as the plurality said, "formulating a constitutional rule would reduce, if not eliminate, [the] fruitful experimentation [with different standards], and freeze the developing productive dialogue between law and psychiatry into a rigid constitutional mold."

_____

adjudicatory proceeding did not discuss Powell and were decided before Medina.

[6] The fact that the General Assembly has created a statutory mechanism for an adult to assert an insanity defense in a criminal proceeding, see Chapters 11 and 11.1 of Title 19.2, does not transform the insanity defense into a constitutional right for either adults or juveniles.  Chatman

Id. at 536-37; see also Leland v. Oregon, 343 U.S. 790, 800-01 (1952) (adoption of the irresistible impulse test is not "implicit in the concept of ordered liberty" because "choice of a test of legal sanity involves not only scientific knowledge but questions of basic policy as to the extent to which that knowledge should determine criminal responsibility").

Thus, we conclude that the Court of Appeals erred in holding that the circuit court violated Chatman's due process rights when it denied his motion for a psychiatric evaluation, thereby preventing him from asserting an insanity defense at the adjudicatory proceeding on the petition charging Chatman with delinquency.

Having disposed of Chatman's constitutional claim, we now turn to his argument that he also has a statutory right to raise an insanity defense. With regard to this issue, Chatman first notes that Chapter 11 of Article 16.1, dealing with juvenile and domestic relations district courts, does not contain any language prohibiting a juvenile from presenting such a defense. Continuing, he posits that the use of the term "person" in Code §§ 19.2-168 and 16.1-278.11

_____

has not argued that he has a right under the Equal Protection Clause to raise an insanity defense.

necessarily includes both adults and juveniles.[7]  Otherwise,

the General Assembly would have used some term other than

"person" in these two provisions.  We are not persuaded by

Chatman's arguments.

We begin the statutory analysis by reviewing the

provisions of the Code pertaining to the adjudication and

disposition of a 13-year-old juvenile charged with

delinquency.[8]  A "[d]elinquent child" is defined as "a child

who has committed a delinquent act."  Code § 16.1-228.  A

"[d]elinquent act" is "an act designated a crime under the

law of this Commonwealth . . . ."  Id.  When a juvenile is

found to be delinquent, the juvenile court or the circuit

_____

[7] Code § 19.2-168 provides, in pertinent part, that "[i]n
any case in which a person charged with a crime intends . . .
to put in issue his sanity at the time of the crime charged
. . . , he . . . shall give notice in writing to the attorney
for the Commonwealth . . . ."  Irrespective of whether the
term "person" includes both juveniles and adults, Chatman was
not "charged with a crime."  Instead, he was charged with
delinquency.
     Code § 16.1-278.11 states, in pertinent part, that "[i]n
cases involving a person who is adjudged mentally ill . . .,
disposition shall be in accordance with the provisions of
Chapters 1 (§ 37.1-1 et seq.) and 2 (§ 37.1-63 et seq.) of
Title 37.1."

[8] The provisions of Chapter 11 of Title 16.1 regarding
juveniles 14 years of age or older are not relevant to our
discussion because Chatman was 13 years old at the time of
the offense at issue in this case.  Thus, he could not be
tried as an adult. See Code § 16.1-269.1  Accordingly, the
cases cited by the Court of Appeals and Chatman in which
juveniles were transferred to circuit court for proper

11

court has several available options with regard to making "orders of disposition for [the juvenile's] supervision, care and rehabilitation." Code § 16.1-278.8. One of those options, which is relevant to the present case, is to commit a juvenile who has been adjudicated delinquent to an appropriate hospital pursuant to the provisions of Code §§ 16.1-338 through -345 of "The Psychiatric Inpatient Treatment of Minors Act" when the court "reasonably believes" that the juvenile is mentally ill. Code § 16.1-280. The court's authority under Code § 16.1-280 is, however, predicated upon a finding of delinquency. Furthermore, § 16.1-337 of "The Psychiatric Inpatient Treatment of Minors Act" provides that "[a] minor may be admitted to a mental health facility for inpatient treatment <u>only</u> pursuant to §§ 16.1-338, 16.1-339, or § 16.1-340 [of that act] or in accordance with an order of involuntary commitment . . . ."[9] (Emphasis added.)

Notably, in contrast to the specific statutory provisions dealing with a juvenile's incompetence to stand

_____

criminal proceedings as an adult are not relevant to the questions presented in this appeal.

[9] Code § 16.1-278.11 also provides that "[i]n cases involving a person who is adjudged mentally ill . . . , disposition shall be in accordance with the provisions of Chapters 1 (§ 37.1-1 <u>et</u> <u>seq.</u>) and 2 (§ 37.1-63 <u>et</u> <u>seq.</u>) of Title 37.1." To the extent, if any, that there is a conflict

12

trial, see Code §§ 16.1-356 through -361, the Code does not contain any provision allowing the use of an insanity defense at the adjudicatory phase of a delinquency proceeding. Instead, the General Assembly elected to make a juvenile's mental illness or insanity a factor to be considered during disposition after the juvenile had been adjudicated delinquent. Code § 16.1-280. "Courts 'cannot read into a statute something that is not within the manifest intention of the legislature as gathered from the statute itself.' " Jordan v. Town of South Boston, 138 Va. 838, 844, 122 S.E. 265, 267 (1924)(quoting 25 R.C.L. 963, § 218).

Nevertheless, Chatman contends that the provisions of Chapters 11 (proceedings on questions of insanity) and 11.1 (disposition of persons acquitted by reason of insanity) of Title 19.2 should be interpreted as applying to juveniles during an adjudication of delinquency. In response, the Commonwealth points out that, under the provisions pertaining to the disposition of persons acquitted by reason of insanity, it is possible to have an indeterminate period of commitment for inpatient treatment. Because of this possibility, the Commonwealth reasons that those provisions cannot apply to juveniles because the juvenile and domestic

_____

between this provision and the terms of Code § 16.1-337, that issue is not before us.

13

relations district courts do not have jurisdiction over a juvenile beyond the juvenile's 21st birthday.  We agree with the Commonwealth.

When a defendant is acquitted by reason of insanity at the time of the offense, the court must place the acquittee in the temporary custody of the Commissioner of Mental Health, Mental Retardation and Substance Abuse Services for an evaluation to determine whether that acquittee can be released or requires commitment.  Code § 19.2-182.2.  If an acquittee is mentally ill and in need of inpatient hospitalization, the court must commit the acquittee.  Code § 19.2-182.3.  When an acquittee is committed for inpatient hospitalization, the committing court must conduct periodic assessments of the confined acquittee's continuing need for such treatment.  Code § 19.2-182.5.  As the Commonwealth points out, the provisions of the Code dealing with the disposition of persons acquitted by reason of insanity do not, however, limit the length of time that an acquittee can be confined for inpatient treatment.  Thus, it is conceivable that an acquittee could be confined for inpatient treatment for many years or for the remainder of his or her life, if

14

the acquittee continues to be mentally ill and in need of inpatient treatment.[10]  Code §§ 19.2-182.5(C) and -182.6(C).

However, the juvenile and domestic relations district courts retain jurisdiction over a juvenile only until that juvenile attains the age of 21 years.  Code § 16.1-242.[11] Thus, if the statutory scheme governing the disposition of persons acquitted by reason of insanity were available to a 13-year-old juvenile, that scheme's indeterminate period of commitment for inpatient hospitalization could run afoul of the limited duration of the juvenile and domestic relations district courts' jurisdiction.  If the General Assembly had intended for a juvenile such as Chatman to assert an insanity defense under Chapters 11 and 11.1 of Title 19.2, we believe that it would have resolved this conflict.  Thus, we conclude that Chatman does not have a statutory right to raise the

_____
[10] The factors that must be considered when initially committing an acquittee and also when reviewing the need for continued confinement are: (1) to what extent the acquittee is mentally ill or mentally retarded; (2) the likelihood that the acquittee will engage in conduct that presents a substantial risk of bodily harm either to other persons or to the acquittee; (3) the likelihood that the accquittee can be adequately supervised and treated as an outpatient; and (4) any other factors deemed relevant by the court.  Code § 19.2-182.3.

[11] On appeal, a circuit court has the powers and authority granted to the juvenile and domestic relations district courts.  Code § 16.1-296(I).

15

defense of insanity at the adjudicatory phase of his delinquency proceeding.

For these reasons, we will reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court adjudicating Chatman to be delinquent.[12]

<u>Reversed and final judgment</u>.

JUSTICE KOONTZ, dissenting.

Today a majority of this Court permits Christopher Lyance Chatman, a 13-year-old juvenile who well may not have known the difference between right and wrong or not have understood the nature and consequences of his act, to be adjudicated a delinquent upon a finding that he committed the crime of unlawful wounding in violation of Code § 18.2-51, and then to be committed to the Department of Juvenile Justice for an indeterminate period of time pursuant to Code §§ 16.1-278.8 and 16.1.285. The majority permits this child to be adjudicated and committed by the trial court because it concludes that a 13-year-old child does not have a right to assert an insanity defense at the adjudicatory phase of a juvenile delinquency proceeding under either the Due Process

_____

[12] Chatman also argues on brief that the circuit court erred in not granting his motion for a psychiatric evaluation because the results of the evaluation might have been relevant to the disposition of his case. However, Chatman did not present that argument to the circuit court. Thus, we will not consider it on appeal. Rule 5:25.

Clause of the Fourteenth Amendment or the statutes of this Commonwealth.[13]  The majority permits this child to be so treated even though it acknowledges that this Court has recognized the defense of insanity for adults, under the so-called M'Naghten Rule, since 1871.  See Boswell v. Commonwealth, 61 Va. (20 Gratt.) 860, 874-76 (1871).

The citizens of this Commonwealth and, indeed, the General Assembly may be rightfully troubled and surprised to learn that over the ensuing 129 years since 1871, according to the majority, this well-established common law right of adults has not been extended to 13-year-old juveniles charged with acts that would be crimes if committed by adults.  For my part, I cannot join in such a conclusion and, accordingly, I respectfully dissent.

The Court of Appeals properly noted that the "Juvenile and Domestic Relations District Court Law [contained in Chapter 11 of Title 16.1 of the Code of Virginia] does not expressly provide for or prohibit an insanity defense at either an adjudicatory hearing in [juvenile] court or in an

_____
[13]The majority states that "[t]hese are the two sources upon which Chatman relies to assert that he has [the right to assert an insanity defense]."  Indeed, as related by the majority, it was the Commonwealth that asserted this limitation in the trial court.  Regardless, we may not simply ignore the common law of this Commonwealth as the proper source of Chatman's right.

17

appeal to the circuit court upon a finding of delinquency." Chatman v. Commonwealth, 30 Va. App. 593, 597, 518 S.E.2d 847, 849 (1999). After referencing the various statutes that provide the mechanism for a criminal defendant to raise and prove an insanity defense contained in Chapter 11 of Title 19.2, the Court of Appeals found "no reasonable basis for concluding that an insanity defense is unavailable to a juvenile at a proceeding to adjudicate him or her delinquent as it would be to an adult defendant in a criminal trial." Id. at 601, 518 S.E.2d at 851. The Court further concluded that "the right to assert an insanity defense is an essential of 'due process and fair treatment' which is required at a juvenile delinquency adjudication." Id. The Court expressly noted that because Chatman was not yet 14 years of age at the time the charged offense was committed, he could not have been tried as an adult in the circuit court. See Code § 16.1-269.1. Finally, the Court also noted that it expressed no opinion regarding Chatman's disposition in the event he were to be found not guilty by reason of insanity.

Upon appeal to this Court, the majority carefully limits its holding to apply only to a juvenile under age 14. Undoubtedly this is so because under the pertinent statutory scheme age 14 is the critical age in determining whether a juvenile may be tried as an adult and under certain

18

circumstances sentenced to incarceration as an adult.  See Code §§ 16.1-269.1 and 16.1-272.  The apparent significance of making this careful distinction in the majority's analysis between age 13 and age 14 is that presumably there would be no question that when a juvenile 14 years old or older is tried as an adult, such a juvenile would have the same right as an adult to assert a defense of insanity to the charged offense.

The majority, relying upon Code § 16.1-280, concludes that "the General Assembly elected to make a juvenile's mental illness or insanity a factor to be considered during the [dispositional phase and] after the juvenile had been adjudicated delinquent."  This statute, however, specifically addresses a case where the juvenile court "reasonably believes" that a juvenile "is mentally ill or mentally retarded."  (Emphasis added).  Clearly this statute addresses the court's dispositional options with regard to a juvenile's mental condition at the time of the proceeding; the insanity defense, in sharp contrast, addresses the juvenile's mental condition at the time the charged offense was committed. Thus, under the majority's analysis, where a 13-year-old juvenile is proven to be insane at the time he or she committed the charged offense, but not mentally ill at the time of the adjudicatory hearing regarding that offense, that

19

juvenile may nevertheless be adjudicated a delinquent. Surely there can be no such offense as being delinquent by reason of being insane.

The United States Supreme Court's statement that "while the Due Process Clause affords an incompetent defendant the right not to be tried . . ., we have not said that the Constitution requires the States to recognize the insanity defense," Medina v. California, 505 U.S. 437, 449 (1992), is not dispositive of the issue whether a 13-year-old juvenile has the right to assert that defense in this Commonwealth. Under well-established principles, that holding does not prevent this Commonwealth from extending the right to assert the insanity defense both to adults and to all juveniles as a matter of state law. And in doing so, the Commonwealth is free, for purposes of state law, to find that "fundamental fairness" requires that both adults and juveniles be permitted to assert this defense. In my view, the General Assembly, relying upon this Court's long recognition of the insanity defense without express limitation to the age of the accused, also has not limited or restricted this defense to cases involving adults charged with criminal acts.

The pertinent statutes contained in Chapter 11 of Title 19.2 provide the mechanism for a criminal defendant to raise and prove an insanity defense. The right to assert that

defense, however, arises from this Court's recognition of that right as a matter of the common law of this Commonwealth unless otherwise limited or restricted by statute. Code § 19.2-168 implicitly acknowledges the right for a juvenile to assert the insanity defense in the adjudicatory phase of the juvenile court proceeding. The statute provides, in pertinent part, that "[i]n <u>any case</u> in which <u>a person</u> charged with a crime intends . . . to put in issue his insanity at the time of the crime charged . . . he, or his counsel, shall give notice in writing to the attorney for the Commonwealth . . . ." (Emphasis added).[14] The broad language in this statute does not limit its application to proceedings involving adult defendants. A juvenile, even one 13-years-old, is "a person." That conclusion is not merely a

_____

[14]In footnote 7, the majority reasons that Code § 19.2-168 is not applicable in Chatman's case because "Chatman was not 'charged with a crime.' Instead, he was charged with delinquency." The fine distinction the majority thus attempts to draw between "a crime" and "delinquency" in this case is simply not supported in the pertinent statutes. Code § 16.1-228, in part, states that " Delinquent act' means (i) an act designated a crime under the law of this Commonwealth" and a " 'Delinquent child' means a child who has committed a delinquent act." Chatman was charged with having committed the crime of malicious wounding in violation of Code § 18.2-51. Such a crime is designated a "violent juvenile felony." <u>See</u> Code §§ 16.1-241(A)(6) and 16.1-269.1(C). <u>See also</u> Code § 16.1-278.8(14)(permitting a juvenile to be committed to the Department of Juvenile Justice if older than ten years of age for "an offense" which would be a felony or a Class 1 misdemeanor if committed by an adult and the juvenile has

21

simplistic one.  Certainly, the Supreme Court's decisions in

In re Gault, 387 U.S. 1 (1967), and in In re Winship, 397

U.S. 358 (1970), are clear that for certain constitutional

rights the juvenile in each of these cases was a "person"

under the Due Process Clause.  In addition, because the

insanity defense has been recognized as a part of the common

law of this Commonwealth and has been deeply engrained in the

practice of criminal law here since 1871, we can assume that

the General Assembly intended "fair treatment" for both

adults and juveniles when it enacted Code § 19.2-168 and,

thus, used the term "person" in this statute to accomplish

that purpose.

Admittedly, it is mere speculation as to whether Chatman

could successfully establish his insanity at the time of the

charged offense.  Judicial experience reflects that the

insanity defense is seldom successfully asserted.  However,

the majority reasons, in part, that because the pertinent

statutory scheme pertaining to the disposition of persons

acquitted by reason of insanity conceivably could result in

an indeterminate period of commitment, those provisions

cannot apply to juveniles because the juvenile courts do not

have jurisdiction over the juvenile beyond the juvenile's

_____

previously been found to be "delinquent" based on such
offenses).

22

21st birthday.  See Code §§ 19.2-182.2 through 19.2-182.6. There is, however, a significant difference between the existence of the right for the juvenile to assert an insanity defense on the one hand, and, on the other, in what manner the juvenile court upon acquitting the juvenile by reason of his or her insanity would apply the statutory provisions for the treatment of a person so acquitted.

The answer to the "conflict" which the majority perceives in this statutory scheme, in my view, is that the acquitted juvenile would remain committed until his or her 21st birthday only if he or she remained mentally ill.  Upon reaching his or her 21st birthday the acquitted juvenile would have to be released absent any further action by the Commonwealth.  In that regard, nothing would prohibit the Commissioner of Mental Health, Mental Retardation and Substance Abuse Services, into whose custody the juvenile was originally committed, to file a petition in the appropriate court to have the person recommitted under the provisions of Chapters 1 and 2 of Title 37.1-1.

Finally, and more importantly, the holding of the majority has the potential of considerable adverse impact on a juvenile who is subsequently found guilty of other criminal acts after having been adjudicated delinquent at age 13, or younger, for an offense committed while insane.  This is so

23

because the adjudication of delinquency for violating a criminal statute could then be used by the Commonwealth to effectively increase the juvenile's punishment for the subsequent criminal acts.  See, e.g., Code § 16.1-278.8 (permitting enhanced punishment were juvenile has been previously adjudicated delinquent); § 16.1-269.l(e) (permitting consideration of prior commitments to juvenile correctional centers in transfer of juvenile to circuit court to stand trial as an adult).  In short, while made in a different context, the familiar quote from Kent v. United States, 383 U.S. 541, 556 (1966), seems applicable.  There Justice Fortis observed that "[t]here is evidence . . . that there may be grounds for concern that the child receives the worst of both worlds; that he gets neither the protection accorded to adults nor the solicitous care and regenerative treatment postulated for children."

If such is the case for a 13-year-old juvenile with regard to the right to assert an insanity defense at the adjudicatory phase of the juvenile proceedings in this Commonwealth, then perhaps the General Assembly, in its wisdom, will determine that such is not "fair treatment" and legislate accordingly.  Again, for my part, I am compelled to believe that the common law of this Commonwealth, rather than the Due Process Clause or the various statutes addressed by

24

the majority, already protects such a child by affording the right to assert an insanity defense to any child charged with an offense that would be a crime if committed by an adult.

For these reasons, in my view, the Court of Appeals properly determined that Chatman was entitled to a mental health evaluation in anticipation of asserting an insanity defense. Accordingly, I would affirm the judgment of the Court of Appeals.