# VIRGINIA:

*In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond on Thursday the 31st day of August, 2017.*

Larry Lee Williams,                                                            Appellant,

  against        Record No. 160257
                Circuit Court Nos. CR14-F-4269 and CR14-F-4270

Commonwealth of Virginia,                                                 Appellee.


Larry Lee Williams,                                                            Appellant,

  against        Record No. 161639
                Circuit Court No. CR14-F-3991

Commonwealth of Virginia,                                                 Appellee.


                             Upon appeals from judgments
                             rendered by the Circuit Court of the City of
                             Richmond.

Upon consideration of the records, briefs, and argument of counsel, the Court is of opinion that the ends of justice exception under Rule 5:25 does not apply and the alleged errors were not preserved for review in either appeal. We therefore affirm the judgments of the circuit court.

On September 2, 2014, a grand jury of the City of Richmond indicted Larry Lee Williams (Williams) for the July 8, 2014 felony assault and battery, third or subsequent offense, of his wife, Tameka Bond (Bond), in violation of Code § 18.2-57.2(B) (July Offense). On September 10, of that same year, a grand jury indicted Williams for another violation of Code § 18.2-57.2(B), as well as attempted murder under Code §§ 18.2-26 and 18.2-32, for his actions against Bond on August 24, 2014 (August Offenses).

After a licensed clinical psychologist determined that Williams was competent to stand trial on all charges, the circuit court held a plea hearing on May 18, 2015. At that hearing, the Commonwealth informed the court that, based on recorded jail phone calls in which Williams stated he had a "blackout" and could not recall the events of August 24, 2014, and his

"agreement that he is accepting responsibility for the incident on July 8th, we did come to an agreement for him to be found not guilty by reason of insanity on the August 24th offenses." The Commonwealth stated there was no written plea agreement, and Williams' attorney confirmed the plea deal.

During the May 18 hearing, Williams agreed that he understood "what the ranges of penalties are on the charges" to which he was pleading guilty and not guilty by reason of insanity. The Commonwealth then summarized the evidence for all of the offenses, and admitted into evidence certified copies of Williams' three prior convictions for assault on a family member, and a photograph of the injury Bond sustained during the July Offense.

The circuit court found that the Commonwealth provided a "sufficient factual basis" to accept Williams' guilty plea on the July Offense, and found him guilty of felony assault and battery of a family member, third or subsequent offense. As to the August Offenses, the court accepted Williams' plea of not guilty by reason of insanity, and ordered him placed into the temporary custody of the Commissioner of the Department of Behavioral Health and Developmental Services for evaluation pursuant to Code § 19.2-182.2 "as to whether [he] may be released with or without conditions or requires commitment."

The circuit court held a sentencing hearing on November 17, 2015. At that hearing, Bond testified about Williams' abusive behavior. The Commonwealth asked for five years' incarceration for the July Offense followed by involuntary civil commitment for the August Offenses, arguing that such a sentence reflected the fact that the court was imposing two sentences for two different types of pleas.

Williams argued that the reports of both a clinical neuropsychologist and a psychiatrist, prepared after evaluations required because of his not guilty by reason of insanity pleas, "recommend inpatient treatment because [Williams] is mentally ill." Williams requested that the circuit court allow him to serve his involuntary civil commitment on the August Offenses immediately so that he could receive the recommended treatment, rather than the court sentencing him to serve any time in prison on the July Offense.

The circuit court agreed with the sequence recommended by the Commonwealth. It sentenced Williams to five years' incarceration for the July Offense, and on the August Offenses ordered that he be involuntarily "committed [as an] inpatient . . . after release from

2

incarceration." Williams did not object. On November 19, 2015, the court entered orders confirming the sentence and involuntary civil commitment.[1]

Subsequently, Williams appealed his criminal case (July Offense) to the Court of Appeals of Virginia, and appealed his involuntary civil commitment (August Offenses) to this Court, both on the grounds that the circuit court erred by sentencing him to serve the prison term before beginning his involuntary civil commitment. On November 22, 2016, this Court certified the appeal from the Court of Appeals pursuant to Code §§ 17.1-409(A) and (B)(1) and (2), and paired that case (Record No. 161639) with Williams' direct appeal to this Court regarding the August Offenses (Record No. 160257).

Williams' assignment of error in both cases states:

> The ends of justice require this Court to correct a manifest injustice and find that the trial judge erred as a matter of law [by abusing his discretion and] by violating Williams' due process rights when he removed Williams, a mentally ill patient, from Central State Hospital, without conditions or a discharge plan, to serve his five-year prison sentence with prisoners convicted of crimes and then to serve a civil commitment thereafter instead of remanding him immediately to the hospital and giving him credit toward his prison sentence while being treated in the hospital.[2]

Williams concedes that his objections concerning the sequencing of his prison sentence and civil commitment were not made below and are therefore not preserved for review. Accordingly, this Court cannot consider those arguments "as a basis for reversal . . . except for good cause shown or to enable this Court to attain the ends of justice." Rule 5:25.

"This Court considers two questions when deciding whether to apply the ends of justice exception: (1) whether there is error as contended by the appellant; and (2) whether the failure to apply the ends of justice provision would result in a grave injustice." *Commonwealth v. Bass,* 292 Va. 19, 27, 786 S.E.2d 165, 169 (2016) (internal quotation marks and citation omitted). The ends of justice exception is applied "in very limited circumstances including, for example, where the record established that an element of the crime did not occur, a conviction based on a void

---

[1] Williams filed a Motion to Modify Sentence on December 10, 2015, and requested the court to "suspend his five-year [prison] sentence so he can continue with his treatment," but there was no hearing or ruling on this Motion.

[2] Bracketed language appears only in the assignment of error for Record No. 161639.

sentence, conviction of a non-offense, and a capital murder conviction where the evidence was insufficient to support an instruction." *Gheorghiu v. Commonwealth*, 280 Va. 678, 689, 701 S.E.2d 407, 414 (2010) (citations omitted).

In this instance, we need not decide whether the circuit court erred and abused its discretion by sequencing Williams' prison term and involuntary civil commitment as it did, because the court's decision to send Williams to serve his prison term for the July Offense before his involuntary civil commitment for the August Offenses does not result in a grave injustice.

Regarding due process, it is undisputed that Williams' sentencing for both the July Offense and the August Offenses satisfied due process in that he had a hearing at which evidence was presented and he was provided a chance to be heard and to present documentary evidence as well as witnesses, and he had counsel throughout the proceedings. *See Hood v. Commonwealth*, 280 Va. 526, 536-37, 701 S.E.2d 421, 427 (2010). Indeed, Williams does not challenge the propriety of the sentence imposed for the July Offense or the involuntary civil commitment ordered with respect to the August Offenses; instead, his appeal focuses on the propriety of the sequencing of the imposition of the period of incarceration and the involuntary civil commitment.

Williams argues that the ends of justice exception should be applied here, because the circuit court "ignored the seriousness" of his mental illness and he is being punished "for having a mental illness." He asserts that the "process due to him was to commit him directly to inpatient hospitalization to receive treatment" as recommended by the doctors, and that punishing him by sending him to prison is a "manifest injustice." We disagree.

The five-year prison sentence Williams has been sentenced to serve is for a crime he committed and to which he pled guilty while he was sane and competent. It is not a manifest injustice that he be required to serve that sentence. In serving that five-year sentence, he is not being punished because he has a mental illness, but because of a crime he committed before his alleged temporary state of insanity and to which he pled guilty after he had recovered from his purported temporary state of insanity.

There is no statutory direction concerning the proper sequence of the imposition of his incarceration for the criminal conviction in relation to his involuntary civil commitment for different crimes he committed during his subsequent period of temporary insanity. Williams'

argument, in essence, is that imposing his incarceration before his involuntary civil commitment is manifestly unjust because it deprives him of mental health treatment that he needs. However, there is no manifest injustice in regard to the sequencing of his incarceration and involuntary civil commitment because his confinement for his involuntary civil commitment is suspended conditioned upon his incarceration, and the Department of Corrections (DOC) is required by statute to provide Williams all health treatment he needs during his period of incarceration.

Prisons are required to provide inmates with medical care and treatment. Code § 53.1-32(A) ("It shall be the general purpose of the state correctional facilities to provide proper . . . medical and *mental health care and treatment*, discipline and control of prisoners . . . . In no event shall any prisoner be denied medically necessary service due to his inability to pay.") (emphasis added). *See also Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976) (concluding that the principles of the Eighth Amendment "establish the government's obligation to provide medical care for those whom it is punishing by incarceration," and that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment") (citation omitted)). Just as the DOC is required to provide care for an inmate with a broken leg, it is also required to provide care for an inmate with a mental health condition. Therefore, Williams will receive any mental health care treatment he needs while incarcerated.[3]

In addition, should the need arise, Williams can also be transferred to a facility outside of the DOC, including the facility where he would have served his involuntary civil commitment, if the DOC determines that it cannot provide the kind of care he requires during his period of incarceration. Code § 19.2-169.6 (providing a mechanism for involuntary civil commitment of inmates); *see also* Code § 53.1-40.2 (providing for the "involuntary admission [to a hospital] of a prisoner who is sentenced and committed to the [DOC] and who is alleged or reliably reported to have a mental illness to a degree that warrants hospitalization") *and* Code § 53.1-40.9 (providing

---

[3] The DOC is also responsible for Williams' safety and the safety of others with whom he comes into contact during his period of incarceration. *See, e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (noting that the Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates," and that they "have a duty . . . to protect prisoners from violence at the hands of other prisoners") (internal quotation marks omitted).

for an involuntary civil commitment proceeding for a "prisoner whose release from the custody of the [DOC] is imminent and who may have a mental illness and be in need of hospitalization or treatment").

As a DOC inmate, Williams can be provided with mental health treatment options consistent with the recommendations of the psychologist and psychiatrist who examined him, or other assessments of his mental state and needs undertaken during his incarceration, if he continues to need such treatment. Therefore, the circuit court's order sending Williams to prison prior to his involuntary civil commitment does not result in a grave injustice as regards his alleged deprivation of treatment. Accordingly, this Court declines to apply the ends of justice exception under Rule 5:25 to review the errors alleged by Williams.

The judgments of the circuit court are therefore affirmed. This order shall be certified to the Circuit Court of the City of Richmond and shall be published in the Virginia Reports.

_____

JUSTICE MIMS, concurring.

I reluctantly concur with the Court's ruling declining to apply the ends of justice exception to Rule 5:25 in this case. I write separately to emphasize my concern that the existing statutes provide inadequate direction to the courts and to urge the General Assembly to re-examine them.

I agree with Justice Powell that, having adjudicated Williams not guilty of the August 2014 offenses by reason of insanity, the trial court was required by Code § 19.2-182.2 to place him in the custody of the Department of Behavioral Health and Development Services for evaluation. The trial court did so. I also agree with Justice Powell that, after the trial court found that Williams was in need of inpatient hospitalization (based on the evaluation report), it was required to commit him. Again, the trial court did so. The trial court therefore discharged its obligation under the statutes, in their current form.

Nevertheless, the statutes are deficient because they do not direct courts how to prioritize incarceration and commitment when a defendant is found guilty of some criminal offenses but not guilty of others by reason of insanity. I cannot conclude that that trial court erred when it ordered the sequence of incarceration before commitment, so I must agree with the Court that the

6

ends of justice exception does not apply in this case. *Commonwealth v. Bass,* 292 Va. 19, 27, 786 S.E.2d 165, 169 (2016).

The Court is prepared to rely on prisons' constitutional and statutory obligations to provide adequate mental health treatment. But medical care is merely an incidental function of correctional facilities, which are principally charged with custody and rehabilitation. Medical care, including mental health treatment, is the principal responsibility of hospitals and other treatment facilities. Mental health treatment "provided in the inherently coercive system of prisons is . . . at the very least, extremely challenging." Anasseril E. Daniel, M.D., *Care of the Mentally Ill in Prisons: Challenges and Solutions*, 35 J. Am. Acad. Psychiatry L. 406, 408 (2007). "[P]rison disciplinary measures are deliberately stressful, if not harmful for those with serious mental illness, in comparison with behavioral therapy." Alan R. Felthous, *Enforced Medication in Jails and Prisons: The New Asylums*, 8 Alb. Gov't L. Rev. 563, 572 (2015).

The Court also states that if the Department of Corrections' mental health facilities are inadequate to treat Williams, the Department can transfer him to a hospital under Code § 53.1-40.2. However, that code section says nothing about transferring prisoners if the Department's mental health treatment facilities are inadequate. Rather, it permits the Director of the Department or his designee to petition for the involuntary admission of a prisoner "who is alleged or reliably reported to have a mental illness to a degree that warrants hospitalization." In this case, the psychiatrist and clinical psychologist who examined Williams pursuant to the trial court's Code § 19.2-182.2 order reported that he needs inpatient hospitalization. If their report is not sufficiently "reliabl[e]" for the purposes of Code § 53.1-40.2, whose could be? If the trial court's subsequent judicial finding that he needs such treatment is not a sufficient "alleg[ation]," what is? Yet the Director's decision is discretionary under the statute, so Williams has no means by which to compel him to act.

Although I must conclude that the Court's disposition in this case is correct under the law as it stands, I believe that the statutes applicable here are woefully inadequate in their present form to address the mental health crisis that continues to grow in our correctional facilities. Correcting these statutory deficiencies is unquestionably the province of the legislature, not of the courts (until they reach constitutional dimensions). I appreciate that the General Assembly continues to wrestle with these difficult issues. I urge it to consider both the issue of how courts

7

should prioritize incarceration and commitment when a defendant is found guilty of some criminal offenses and not guilty of others by reason of insanity, and whether a finding that a defendant needs inpatient hospitalization for the purposes of committing him under Code § 19.2-182.3 should be sufficient to compel the Department of Corrections to petition to have a prisoner in its custody involuntarily admitted to such hospitalization.

———————————

JUSTICE POWELL, dissenting.

The majority rules that it need not decide whether the trial court erred and abused its discretion in sequencing Williams' sentences as it did because it is not a grave injustice to require Williams to serve his incarceration prior to being involuntarily committed for his mental illness after being found not guilty by reason of insanity. Under the facts of this case, I believe that the trial court erred and I respectfully disagree with the majority's conclusion that the ends of justice exception under Rule 5:25 does not apply. In my opinion, the ends of justice should be applied to the limited issue presented here, when a trial court does not follow the explicit language of a statute requiring civil commitment and instead imposes a term of incarceration.

The majority finds that there was no manifest injustice for two reasons: (1) there is no statutory direction concerning the proper sequence of the imposition for the criminal conviction in relation to his involuntary civil commitment; and (2) the Department of Corrections has the resources, facilities, and obligation to provide Williams with mental health treatment during his period of incarceration. I must respectfully dissent, as I disagree with the first point and find the second point irrelevant.

I fully agree with the majority as to the discretion to be afforded a trial court's sentencing. Normally, "[t]he determination of sentencing lies within the sound discretion of the trial court." *Martin v. Commonwealth*, 274 Va. 733, 735, 652 S.E.2d 109, 111 (2007). "[W]hen a decision is discretionary . . . the court has a range of choice, and . . . its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Lawlor v. Commonwealth*, 285 Va. 187, 212-13, 738 S.E.2d 847, 861 (2013) (citations omitted). A sentencing decision will not be reversed absent an abuse of discretion. *Brown v. Commonwealth*, 284 Va. 538, 542, 733 S.E.2d 638, 640 (2012).

8

Here, the trial court was faced with two separate sentencing events, one that was discretionary and one that was mandatory. Therefore, I disagree with the majority that there is no statutory direction concerning the proper sequence of the imposition of his sentence. With regard to Williams' sentence for the July 8, 2014 felony assault and battery, third or subsequent offense, the Code provides a discretionary sentencing range of one to five years' incarceration. *See* Code § 18.2-10(f). Also, because the sentence was not mandatory, the court had the discretion to "suspend imposition of sentence or suspend the sentence in whole or part." Code § 19.2-303.

With regard to the August 24, 2014 offense, however, Williams pled not guilty by reason of insanity. Therefore, the provisions of Chapter 11.1, "Disposition of Persons Acquitted by Reason of Insanity," became applicable. The trial court found Williams not guilty by reason of insanity and placed Williams in temporary custody of the Commissioner of Behavioral Health and Developmental Services pursuant to Code § 19.2-182.2. As required, the trial court ordered an evaluation to determine (1) whether Williams currently had mental illness or intellectual disability and (2) whether he had a need for hospitalization. The evaluators opined that Williams was mentally ill and required inpatient hospitalization. The trial court conducted a hearing pursuant to Code § 19.2-182.3 and found, addressing Williams, that "I agree that you certainly do need to have the benefit of the services at Central State." Having made that finding, the trial court was required to commit Williams to inpatient hospitalization, as mandated by Code § 19.2-182.3: "At the conclusion of the hearing, the court *shall* commit the acquittee if it finds that he has mental illness or intellectual disability and is in need of inpatient hospitalization." (Emphasis added.)[*] By not committing Williams after his acquittal by reason of insanity, the trial court committed an error and abused its discretion as its sentence was influenced by a mistake of law. If left uncorrected by this Court, that error leads to the grave injustice of a mentally ill person being incarcerated instead of receiving inpatient hospitalization as required by Code

[*] *See Commonwealth v. Chatman*, 260 Va. 562, 572, 538 S.E.2d 304, 309 (2003) ("[i]f an acquittee is mentally ill and in need of inpatient hospitalization, the court must commit the acquittee"). "When reviewing the statutory language, the Court is bound by the plain meaning of that language[, and] must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity." *Bates v. Commonwealth*, 287 Va. 58, 63, 752 S.E.2d 846, 849 (2014) (internal quotation marks omitted).

§ 19.2-182.3.  Our cases involving application of the ends of justice are limited, but not exhaustive.  *See Gheorghiu v. Commonwealth*, 280 Va. at 689, 701 S.E.2d at 414.  Applying the ends of justice exception here would prevent a grave injustice.  Ordering immediate incarceration before the involuntary civil commitment was not a judgment that the "court had the power to render."  *Rawls v. Commonwealth*, 278 Va. 213, 221, 683 S.E.2d 544, 549 (2009).  As such, I would find that a manifest injustice did occur and that Williams is entitled to a new sentencing hearing.

Finally, while I agree with every observation made by the majority with regard to the obligations of the Department of Corrections, I find these observations to be irrelevant.  Sentencing is within the province of the judiciary.  Code § 19.2-295.  In my opinion, because the Code does provide a proper sequence of sentencing under the facts of this case, I do not believe that the court can fail to properly exercise its authority simply because the Department of Corrections has tools in place to address the situation.

A Copy,

Teste:

Patricia L. Harrington, Clerk