Andrew Douglas GOLDEN *v.* STATE of Arkansas

99-572 21 S.W.3d 801

Supreme Court of Arkansas
Opinion delivered June 22, 2000
[Substituted opinion delivered July 13, 2000.]

*Ralph Edwin Wilson,* Judge;

*Val P. Price* and *Terry Goodwin Jones*, Law Student Admitted to Practice Pursuant to Rule XV(E)(1)(6) of Rules Governing Admission to the Bar of the Arkansas Supreme Court, for appellant.

*Mark Pryor*, Att'y Gen., by: *C. Joseph Cordi, Jr.*, Ass't Att'y Gen., for appellee.

W H. "DUB" ARNOLD, Chief Justice. This case involves the issues of whether a juvenile defendant has a right to have his competency to proceed determined prior to adjudication and, further, whether a juvenile has a right to assert the defense of insanity. We hold that a juvenile does have a due process right to have his competency determined prior to adjudication and, as such, reverse the trial court on this point. However, we hold that neither due process nor equal protection affords a juvenile the right to an insanity defense and, therefore, affirm the trial court on these issues.

On March 24, 1998, appellant Andrew Golden and Mitchell Johnson opened fire on their classmates at Westside Elementary School in Jonesboro, Arkansas. One teacher and four students were killed, and one teacher and nine students were wounded. At the time of the shootings, appellant Andrew Golden was eleven years old.

On March 25, 1998, a petition was filed, charging Golden and Mitchell with five counts of capital murder and ten counts of first-degree battery. At the probable cause hearing held on March 25, 1998, Golden's attorney informed the court that he intended to raise the affirmative defense of insanity and would also be raising issues concerning Golden's competency to proceed to trial. A separate hearing on these issues was later held.

At the hearing on these issues, Golden's attorney argued that if the court denied Golden the right to argue lack of competency and insanity, it would violate Golden's constitutional rights of due process and equal protection. The trial court rejected these arguments, finding that based upon the nature of juvenile proceedings, Golden was not entitled to raise the issue of whether he was competent to stand trial or to assert the insanity defense. The court reasoned that the safeguards present in juvenile proceedings allow a court to consider any alleged mental disease or defect during the disposition phase, when the court is determining the appropriate placement for the juvenile.

Following the issuance of the trial court's order, Golden's attorney informed the court that he wished to proceed to the adjudication hearing in order to preserve Golden's right to argue the competency and insanity issues on appeal.[1] An adjudication hearing was subsequently held in which the trial court adjudicated Golden guilty and sentenced him to an indeterminate period of time in the Division of Youth Services Training School. The court also provided that if Golden was released before the age of twenty-one, he would remain in a juvenile detention center for up to ninety days.

---

[1] Golden's attorney agreed to stipulate to the facts of the case; however, he did not plead guilty; in other words, he did not stipulate to the intent. He chose to proceed to trial rather than appeal interlocutory from the court's order regarding the competency and insanity issues.

For his points on appeal, appellant asserts the following:

A. that the trial court violated his due-process rights by refusing to determine his competency, or fitness to proceed;

B. that the trial court violated his due-process rights by refusing to allow him to present an insanity defense;

C. that the trial court violated his equal-protection rights by refusing to determine whether he was competent; and

D. that the trial court violated his equal-protection rights by refusing to allow him to present an insanity defense.

As stated above, we reverse in part and affirm in part. We agree with appellant only as to his first point on appeal and hold that a juvenile does have a due process right to have his competency determined prior to adjudication; as such, we reverse the trial court on this point. Having reversed the case on due process grounds regarding competency, we decline to address appellant's equal-protection argument in regard to the issue of competency. We affirm the trial court as to appellant's other points on appeal regarding the insanity defense.

## I. Due Process Rights

Appellant asserts that the trial court violated his due-process rights by refusing to determine his competency, or fitness to proceed, and that the trial court violated his due-process rights by refusing to allow him to present an insanity defense. We agree in regard to competency and disagree in regard to the insanity defense.

## A. Competency to Stand Trial

■ The law is clear that defendants in criminal cases have a fundamental right not to stand trial while incompetent. *See, e.g., Cooper v. Oklahoma*, 517 U.S. 348 (1996); *Drope v. Missouri*, 420 U.S. 162 (1975). This right protects criminal defendants' fundamental interests in their own liberty by ensuring that they are able to participate in their defense in an effort to avoid conviction and incarceration. In regard to juvenile proceedings, while the Arkansas Juvenile Code seems to presume that a defendant being tried in

juvenile court is incompetent to some degree, particularly one who is under the age of fourteen, there was no statutory provision for juveniles at the time of appellant's hearing affording juveniles the same fundamental liberty interests as adults where the issue of competency is concerned.[2]

 Although this issue is one of first impression in Arkansas, the United States Supreme Court held, in the case of *In re Gault*, 387 U.S. 1 (1967), that while proceedings in a juvenile court need not conform with *all* the requirements of a criminal trial, primarily because of the special nature of the proceedings, essential requirements of due process and fair treatment must be met. The Court, in *Gault*, specifically acknowledged a juvenile's right to constitutionally adequate notice, the right against self-incrimination, and the right to cross-examine witnesses; further, the Court explicitly heldthat a juvenile must be afforded the right to counsel during these proceedings. *Id.* at 41. Logically, this right to counsel means little if the juvenile is unaware of the proceedings or unable to communicate with counsel due to a psychological or developmental disability. *See In the matter of Carey*, 241 Mich. App. 222, 615 N.W.2d 724 (2000). Therefore, applying *Gault*, we hold that a juvenile *must* be allowed to assert incompetency and have his competency determined prior to adjudication. As such, we reverse the trial court on this point.

## B. Insanity Defense

Regarding the insanity defense, this Court held in the case of *K.M. v. State*, 335 Ark. 85, 983 S.W.2d 93 (1998), that insanity is not a defense in juvenile proceedings because there is no statutory authority or case law for the defense.[3] IN *K.M.*, WE RELIED UPON

---

[2] Although it may not be applied retroactively, it should be noted that when the General Assembly amended the juvenile code in 1999, it added an entire section on competency, found at Ark. Code Ann. § 9-27-502 (Repl. 1999). The new language provides for a determination of capacity to stand trial for juveniles charged with certain crimes (capital murder being one of them). Further, it properly provides for an "age appropriate" capacity standard to apply to juveniles, which is different than that of adults.

[3] It should be noted that while the applicable juvenile code does not speak in terms of insanity as a defense, the 1999 amendment has included an evaluation of the juvenile's mental state and capacity with regard to mental disease or defect as part of the process of evaluating a juvenile under the age of thirteen who is charged with capital murder or murder in the first degree.

THE U.S. SUPREME COURT HOLDING IN *Medina v. California*, 505 U.S. 437 (1992), THAT THERE IS NO CONSTITUTIONAL RIGHT TO AN INSANITY DEFENSE; THEREFORE, IF ONE IS NOT PROVIDED FOR BY STATUTE, THEN A DEFENDANT MAY NOT ASSERT THE DEFENSE.

■ Clearly, there was no statutory provision in effect in Arkansas at the time of appellant's hearing conferring upon juveniles the right to assert an insanity defense. As such, applying our holding in *K.M. v. State*, we hold that appellant's due process rights were not violated by the trial court's preclusion from allowing him to assert the insanity defense. Therefore, we affirm the trial court on this point.

## II. Equal Protection Rights

Appellant asserts that the trial court violated his equal-protection rights by refusing to determine whether he was competent to proceed and that the trial court violated his equal-protection rights by refusing to allow him to present an insanity defense. We decline to address the competency argument; further, we disagree with appellant that his equal-protection rights were violated in regard to the insanity defense.

### A. Competency to Stand Trial

Because this case is being reversed on due-process competency grounds, it is unnecessary in this case to address the competency issue with regard to equal protection.

### B. Insanity Defense

As discussed above, this Court has already decided the issue of whether juveniles may assert the defense of insanity in *K.M. v. State, supra.* We cited, in support of our decision that juveniles could not assert said defense, the U.S. Supreme Court case of *Medina v. California, supra.*, which held that there is no constitutional right to an insanity defense, so if one is not provided for by statute or case law, then a defendant may not assert it. However, this Court, in *K.M.*, refused to address the issue under an equal protection analysis

because it was not raised below. Therefore, this equal-protection argument is one of first impression for this Court.

■ The appellant contends that no rational basis exists for affording the insanity defense to adult criminal defendants in circuit court while not providing said defense to juvenile defendants; he contends that this undoubtedly amounts to a violation of equal protection. We disagree. Due to the very nature of juvenile proceedings and the difference in purpose of a juvenile proceeding — that being rehabilitative rather than punitive — coupled with the fact that juveniles are neither provided a trial by jury nor various other rights afforded to adult criminal defendants in circuit court, a rational basis *clearly* exists for affording adult criminal defendants in circuit court the right (by statute, not constitutionally), to assert the defense of insanity while not affording the same right to juveniles.

Further, the juvenile code provides a number of alternatives for the judge to consider and recommend in regard to disposition, including treatment, commitment, transfer of legal custody, and other alternatives regarding placement in a community-based program as opposed to a youth services center. See Ark. Code Ann. § 9-27-330 (Repl. 1998). In adult criminal circuit court, the trial judge has no options regarding disposition where a defendant suffering from a mental disease or defect is concerned. In circuit court, the defendant, if proven to be insane, is simply locked away in the State mental hospital until he becomes sane, at which time he will be tried.

■ Clearly, a rational basis exists for affording juvenile defendants less procedural rights than those charged in criminal circuit court, primarily because of the special nature of the proceedings. After all, criminal defendants in circuit court could potentially face life imprisonment, or even a death sentence, unlike those charged in juvenile court. For these reasons, we affirm the trial court on this point, as well.

Reversed and remanded in part; affirmed in part.

SMITH, J., dissenting.

L AVENSKI R. SMITH, Justice, dissenting. I concur in the majority's opinion in all points save the issue of Golden's competency to stand trial. I would affirm the trial court's denial of

a competency hearing. I do so because the distinctions that exist between juvenile court proceedings and adult criminal proceedings are substantial and are rationally based upon the differences between adults and children. Although according a juvenile the right to a competency hearing appears equitable, it is, I submit, unwise. It reflects the continued erosion of all distinction between juvenile court and adult criminal courts. This erosion could ultimately lead to the irrelevance of juvenile codes in general.

A juvenile does not have a fundamental due process right to not be deprived of their liberty as a result of a hearing during which they were incompetent. The State's 'parens patriae' interest, under proper circumstances subordinates the child's liberty interest. *Schall v. Martin*, 467 U.S. 253, 265 (1984). A juvenile has a liberty interest, which the U.S. Supreme Court describes as "substantial," but of which they also state that "that interest must be qualified by the recognition that juveniles, unlike adults, are always in some form of custody." *Schall*, 467 U.S. at 265. The U.S. Supreme Court in this same opinion also states, "Children by definition are not assumed to have the capacity to take care of themselves. They are assumed to be subject to the control of their parents, and if parental control falters, the State must play its role as parens patraie." *Id.*

The distinctions existing between juveniles and adults are recognized by the legislature in Ark. Code Ann. § 9-27-102, which states, "The General Assembly recognizes that children are defenseless and that there is no greater moral obligation upon the General Assembly than to provide for the protection of our children and that our child welfare system needs to be strengthened by establishing a clear policy of the state that the best interests of the children must be paramount and shall have precedence at every stage of juvenile court proceedings...." This is consistent with the parens patriae interest as discussed in the U.S. Supreme Court cases. Implicit in the General Assembly's statement is the recognition that a juvenile will not be competent in the sense an adult would be, because they are assumed not to have the capacity to take care of themselves. In fact, the juvenile proceedings are designed to accomplish its ends without regard to the juvenile's competence because its absence is presumed.

As referenced by the majority, "[T]here is no doubt that the Due Process Clause is applicable in juvenile proceedings." *Schall,* 467 U.S. at 263. The U.S. Supreme Court went on to note the issue in the application of the Due Process Clause "is to ascertain the precise impact of the due process clause requirement upon such proceedings." *In re Gault,* 387 U.S. 1, 13-14 (1967), cited in *Schall,* 467 U.S. at 263. The Supreme Court then went on to note it had decided in the past that the Due Process Clause required application of certain constitutional rights enjoyed by adults and did apply to minors. The court listed the rights, including notice of charges, right to counsel, privilege against self-incrimination, right of confrontation, and proof beyond a reasonable doubt. *Schall,*467 U.S. 263. The Supreme Court then notes that the Constitution does not mandate elimination of all differences in the treatment of juveniles. At issue in *Schall* was whether preventative detention of juveniles, as set out in the New York statute, was "compatible with the 'fundamental fairness' required by due process." *Id.* "We do not mean...to indicate that the hearing must conform with all of the requirements of a criminal trial or even that of the usual administrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment." *In re Gault,* 387 U.S. 1, 30 (1966), (citing *Kent v. State,* 383 U.S. 541, 562 (1966)). The Supreme Court in *Schall* stated that the inquiry required was two fold: whether the statute served a legitimate State objective, and whether the procedural safeguards are adequate.

Because the U.S. Supreme Court speaks of a "legitimate State objective," the applicable test is the "rational basis test." *Arkansas Hosp. Ass'n v. Arkansas State Bd of Pharmacy,* 297 Ark. 454, 763 S.W.2d 73 (1989). That test is whether there is any rational basis connected to a legitimate State purpose. The statute may not be arbitrary or capricious. *Streight v. Ragland Comm'r,* 280 Ark. 206, 655 S.W.2d 459 (1980); *see also, Skelton v. Skelton,* 339 Ark. 227, 5 S.W.3d 2 (1999). I would hold that there is a rational basis for the juvenile code not providing for competency hearings in juvenile cases. Therefore, I respectfully dissent.