**In the Matter of K.G., D.G., D.C.B., and J.J.S.**

No. 49A04–0205–JV–239.

Court of Appeals of Indiana.

Dec. 31, 2002.

---

Steve Carter, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Katherine A. Cornelius, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellees K.G., D.G., D.C.B., and J.J.S.

Loretta A. Oleksy, Indianapolis, IN, Attorney for Appellee Child Advocates, Inc.

## OPINION

NAJAM, Judge

### STATEMENT OF THE CASE

At various times throughout 1999, 2000 and 2001, the State filed delinquency petitions against K.G., D.G., D.C.B., and J.J.S. On March 19, 2002, the juvenile court issued a single order regarding the children's four separate juvenile cases. Pursuant to Indiana Code Section 35–36–3–1, which provides procedures for determining the competency of adult criminal defen-

dants to stand trial, the court determined that none of the children were competent and ordered each child to be committed to the division of mental health to be confined in an appropriate psychiatric institution. On March 28, 2002, the Family and Social Services Administration, Division of Mental Health and Addictions ("DMHA") filed a motion to intervene, which the court granted. On April 9, 2002, DMHA filed a motion for relief from judgment. Following a hearing, the court denied the motion. This appeal ensued.

## ISSUES

DMHA presents three issues for our review:

1. Whether the juvenile court erred when it applied Indiana Code Section 35–36–3–1 to juvenile cases.

2. Whether the juvenile court violated the doctrine of separation of powers when it ordered DMHA to provide services to K.G., D.G., D.C.B., and J.J.S.

3. Whether DMHA has the financial responsibility to pay for the costs of the competency-related services.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In November 1999, the State filed a delinquency petition against D.G. alleging that he committed Child Molesting, as a Class B felony, and Child Molesting, as a Class C felony, when committed by an adult. That same month, D.G. filed his Notice of Insanity Defense and Incompetency to Stand Trial. D.G. underwent a competency evaluation in December 1999, when he was ten years old. At that time,

the evaluator reported that D.G. had previously undergone counseling and treatment for sexual misconduct and setting fires. D.G. is mildly mentally handicapped, has attention deficit/hyperactivity disorder ("ADHD"), and requires constant adult supervision. He was re-evaluated by the same psychologist in September 2000. The psychologist reported that, despite placement at Valle Vista Residential Treatment Center for seven months, D.G. continued to show risks of acting out sexually and starting fires and that he is not competent to stand trial. At some point thereafter, pursuant to a pending Child in Need of Services ("CHINS") action, D.G. was placed at Lutherwood.[1]

In June 2000, the State filed a delinquency petition against D.C.B., alleging that he committed Arson, a Class B felony, and Conversion, as a Class A misdemeanor, when committed by an adult. D.C.B., who was eleven years old at the time, immediately filed a Motion for Psychiatric Examination to Determine Competence to Stand Trial pursuant to Indiana Code Section 35–36–3–1. He was examined that same month. The competency evaluation showed that D.C.B. suffers from major depression, oppositional defiant disorder, ADHD, and mild mental retardation. The psychiatrist further expressed concern about D.C.B. experiencing possible hallucinations in the past. He also noted a previous diagnosis of autism, but doubted the accuracy of that diagnosis. The psychiatrist concluded that D.C.B. is not competent to stand trial. Like D.G., D.C.B. was eventually placed at Lutherwood pursuant to a CHINS action.

In September 2000, the State filed a delinquency petition against J.J.S., alleging that she had committed Burglary, as a

---

1. Lutherwood is a residential treatment center for children who are recovering from the effects of abuse, neglect, or abandonment.

See http://www.lutheranfamily.org/lutherwood.htm.

Class B felony, and Theft, as a Class D felony, when committed by an adult. Fourteen-year-old J.J.S. entered into a plea agreement and was placed on probation. In April 2001, the court ordered a competency evaluation. J.J.S. was diagnosed as moderately mentally handicapped and ADHD, with an IQ of 48. Again, the evaluator concluded that she is not competent to stand trial. In January 2002, J.J.S. was admitted to Options Treatment Center.

In August 2001, the State filed a delinquency petition against K.G. alleging that he committed Sexual Battery, a Class D felony, when committed by an adult. In September 2001, K.G. filed a Motion for Psychiatric Examination to Determine Competence to Stand Trial pursuant to Indiana Code Section 35–36–3–1. On October 2001, two separate health professionals performed evaluations of K.G. The evaluations submitted to the juvenile court revealed that K.G., then twelve years old, is mildly mentally handicapped, autistic, and has a history of Tourette's Syndrome. K.G. has received psychiatric care for several years. He was diagnosed as bipolar and as having ADHD. K.G. was in special education classes, has an IQ score in the 40's, and a speech problem. At the time of the evaluation, K.G. functioned at the pre-kindergarten level, and it was determined he is not competent to stand trial. In December 2001, the court ordered that K.G. be removed from juvenile detention and placed in the sexual offenders unit at Options Treatment Center.

On March 19, 2002, the court entered an order regarding all four juveniles.[2] In the order, the court explained that each juvenile had been examined for competency pursuant to Indiana Code Section 35–36–3–1 and that none were competent to stand trial. Accordingly, pursuant to Indiana Code Section 35–36–3–1(b), the court ordered the juveniles committed to the DMHA to be confined in an appropriate psychiatric institution. The court further stated in relevant part:

All of the above Respondents are currently placed out of their homes because of the information available to the Court about their ability to understand and assist in their defenses. The court has delayed issuing its final order under [I.C. § 35–36–3–1] in several cases for a significant period of time, in the hope that the parties, along with the agencies currently or contemplated to be involved with the Respondents, could arrive at an acceptable and appropriate resolution to the placement of the Respondents.

The Court is aware that the division of mental health has acknowledged that it does not currently have available appropriate facilities or programs to meet the mental health needs of these Respondents and therefore placement initially with the division of mental health has not been appropriate. The Court has now determined that time requires that the Court make its order and that the division of mental health will resist any order committing the Respondents to the division of mental health. Since

**2.** In a subsequent order, Judge Payne explained that after the court received the children's competency evaluations, the court withheld further action on the pending petitions and convened a series of meetings for state and county agencies "potentially accountable for the care and treatment of th[e] children." The court indicated that "[t]he purpose of the meetings was for agencies to engage in dialogue to reach a resolution for the appropriate placement and treatment of the children and to make appropriate recommendations to the Court." However, when it became apparent to the court that no resolution could be reached, the court issued its March 19, 2002 order committing the children to the DMHA.

there is an impasse, and this Court will not allow the Respondents to be harmed by their placement in an inappropriate or unacceptable program which will not address their mental health and other needs, the Court makes the following order pursuant to the request of the Respondents regarding their competency. The Court finally notes that the placement will not change from their current placement until and unless this Court, or another Court of competent jurisdiction, determines otherwise. This Court reserves the right to take any action necessary to place the Respondents with the division of mental health in the event that this matter is not addressed in a speedy, appropriate and effective manner.

IT IS THEREFORE ORDERED AND ADJUDGED AND DECREED as follows:

1. The Court finds that each of the Respondents,..., lack[s] the ability to understand the proceedings and assist in the preparation of their [sic] respective defenses, as indicated by the reports of the competent, disinterested professionals pursuant to I.C. 35–36–3–1.

2. The Court therefore orders each of the Respondents committed to the division of mental health, to be confined by the division in an appropriate psychiatric institution.

3. The Court orders that each of the Respondents will remain at their [sic] current placements until ordered otherwise by this Court or another Court of competent jurisdiction, this Court reserving the right to place the Respondents in the custody of the division of

mental health if speedy, appropriate and effective action is not taken to respond to this order.

On March 28, 2002, DMHA filed a Motion to Intervene, which was granted. DMHA subsequently filed its Motion for Relief from Judgment pursuant to Indiana Trial Rule 60 and requested that the court vacate its March 19, 2002 order. After a hearing, the court denied DMHA's motion.[3] DMHA now appeals the denial of its motion, and the four separate juvenile cases were consolidated for the purposes of this appeal.

## DISCUSSION AND DECISION

### Standard of Review

 DMHA appeals from the court's denial of its motion for relief from judgment. We review the grant or denial of a Trial Rule 60(B) motion under an abuse of discretion standard. *Integrated Home Technologies, Inc. v. Draper*, 724 N.E.2d 641, 642 (Ind.Ct.App.2000). An abuse of discretion occurs when the trial court's judgment is clearly against the logic and effect of the facts and inferences supporting the judgment for relief. *Id.* However, where, as here, the parties dispute the proper application of a statute, the issue is a pure question of law, which we review de novo. *See Chaja v. Smith*, 755 N.E.2d 611, 614 (Ind.Ct.App.2001) (stating when trial court's legal conclusions rest on application of statute, our review is de novo).

### Issue One: Application of Indiana Code Section 35–36–3–1 to Juvenile Cases

DMHA asserts that the trial court erred when it invoked Indiana Code Section 35–

3. On April 25, 2002, Judge Payne issued a four-page order denying DMHA's motion for relief from judgment, which set forth the history of the four juvenile cases, DMHA's arguments in support of its motion, and the court's reasons for denying the motion. Although we do not include Judge Payne's order verbatim in this opinion, we find his order extremely helpful to our review on appeal.

36–3–1 to determine if K.G., D.G., D.C.B., and J.J.S. are competent to stand for adjudication.[4] In particular, DMHA contends that the court's reliance on the adult criminal code is improper because the juvenile code provides procedures that permit a court to make competency determinations for children and place them in treatment centers when necessary. K.G., D.G., D.C.B., J.J.S., and Child Advocates, Inc. respond that the juvenile code lacks procedures by which a court may order a child to be examined for the purpose of determining competence to stand trial. We address these arguments in turn.

### A. Juveniles' Due Process Right to Competency Determination

As an initial matter, the children and Child Advocates, Inc. assert that juveniles, like adults, have a constitutional right to have their competency determined before they are subjected to delinquency proceedings. Our courts have not yet decided whether juveniles have such a right, and this is an issue of first impression.

■ The United States Supreme Court has held that although the Fourteenth Amendment to the United States Constitution does not require that juvenile delinquency proceedings conform with all the constitutional requirements of a criminal trial, the Due Process Clause does require application of "the essentials of due process and fair treatment." *In re Gault,* 387 U.S. 1, 30, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). The Court has determined that due process in the context of juvenile proceedings includes the right to notice of the charges, *id.* at 34, 87 S.Ct. 1428; the right to counsel, *id.* at 41, 87 S.Ct. 1428; the privilege against self-incrimination, *id.* at 55, 87 S.Ct. 1428; the requirement that the allegations in a delinquency petition be proved beyond a reasonable doubt, *In re Winship,* 397 U.S. 358, 368, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); and the right not to be placed in jeopardy twice, *see Breed v. Jones,* 421 U.S. 519, 529–531, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). But unlike adults, due process does not require that juveniles be afforded the right to trial by jury. *McKeiver v. Pennsylvania,* 403 U.S. 528, 545, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971).

■ Moreover, the law is clear that defendants in criminal cases have a fundamental right under the Due Process Clause not to stand trial while incompetent. *See, e.g., Cooper v. Oklahoma,* 517 U.S. 348, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996); *Drope v. Missouri,* 420 U.S. 162,

---

**4.** Indiana Code Section 35–36–3–1 provides:
(a) If at any time before the final submission of any criminal case to the court or the jury trying the case, the court has reasonable grounds for believing that the defendant lacks the ability to understand the proceedings and assist in the preparation of his defense, the court shall immediately fix a time for a hearing to determine whether the defendant has that ability. The court shall appoint two (2) or three (3) competent, disinterested psychiatrists, psychologists endorsed by the Indiana state board of examiners in psychology as health service providers in psychology, or physicians, at least one (1) of whom must be a psychiatrist, who shall examine the defendant and testify at the hearing as to whether the defendant can understand the proceedings and assist in the preparation of the defendant's defense.
(b) At the hearing, other evidence relevant to whether the defendant has the ability to understand the proceedings and assist in the preparation of the defendant's defense may be introduced. If the court finds that the defendant has the ability to understand the proceedings and assist in the preparation of the defendant's defense, the trial shall proceed. If the court finds that the defendant lacks the ability, it shall delay or continue the trial and order the defendant committed to the division of mental health, to be confined by the division in an appropriate psychiatric institution.

95 S.Ct. 896, 43 L.Ed.2d 103 (1975); *Brewer v. State,* 646 N.E.2d 1382, 1384 (Ind. 1995); Ind.Code § 35–36–3–1. However, as we have indicated, neither the Supreme Court nor the courts of this state have addressed whether due process is violated when an incompetent juvenile is adjudicated a delinquent for committing an offense that would be a crime if committed by an adult. Other states have addressed this issue and, thus, we will look to those cases for guidance.

At least ten states and the District of Columbia have held that juveniles, like adults, have a due process right to a competency determination in delinquency proceedings. *See State ex rel. Dandoy v. Superior Ct.,* 127 Ariz. 184, 619 P.2d 12, 15 (1980) (finding if right to counsel in juvenile proceeding means anything, juvenile must be able to understand and confer with counsel); *Golden v. State,* 341 Ark. 656, 21 S.W.3d 801, 803 (2000) (holding juvenile had due process right to have competency determined prior to adjudication); *James H. v. Superior Court of County of Riverside,* 77 Cal.App.3d 169, 174, 143 Cal.Rptr. 398 (1978) (holding juvenile has due process right to hearing when competency question arises); *In re WAF,* 573 A.2d 1264, 1266 (D.C.App.1990) (holding juvenile system failed to adequately protect the right of incompetent juvenile not to be tried); *In re S.H.,* 220 Ga.App. 569, 469 S.E.2d 810, 811 (1996) (stating "want of competence renders [due process] meaningless" and that "[p]rinciples of fundamental fairness require that [right to competency determination] be afforded in juvenile proceedings."); *State ex rel. Causey,* 363 So.2d 472, 476 (La.1978) (holding right of incompetent juvenile not to be tried is "fundamental" and "essential"); *In re Carey,* 241 Mich.App. 222, 615 N.W.2d 742, 746–47 (2000) (holding right not to be tried while incompetent is as fundamental in juvenile proceedings as it is in criminal

context);); *In re S.W.T.,* 277 N.W.2d 507, 511 (Minn.1979) ("We regard the right not to be tried or convicted while incompetent to be a fundamental right, even in the context of a delinquency adjudicatory proceeding."); *In re Two Minor Children,* 95 Nev. 225, 592 P.2d 166, 169 (1979) (holding juveniles have due process right to competency hearing); *In re Williams,* 116 Ohio App.3d 237, 687 N.E.2d 507, 510 (1997) (stating juveniles have fundamental right not to be tried while incompetent); *State v. E.C.,* 83 Wash.App. 523, 922 P.2d 152, 155 (1996) (holding that adult competency statute applies to juveniles in delinquency proceedings).

■ Of the reasoning applied in these cases, we find the reasoning of the Arkansas, Michigan and Arizona courts most persuasive. Under *Gault,* 387 U.S. at 41, 87 S.Ct. 1428, a juvenile has a right to counsel in a delinquency proceeding. As the Arkansas Supreme Court has succinctly stated, "Logically, the right to counsel means little if the juvenile is unaware of the proceedings or unable to communicate with counsel due to a psychological or developmental disability." *Golden,* 21 S.W.3d at 803. Thus, consistent with the many other states that have addressed this issue, we hold that juveniles, like adult defendants, have a fundamental right not to be tried while incompetent.

### B. Adult Competency Statute

We now address DMHA's claim that the adult criminal competency statute, and the procedures contained therein, do not apply to juveniles. Indiana Code Section 31–32–1–1 provides, "[I]f a child is alleged to be a delinquent child, the procedures governing criminal trials apply in all matters not covered by the juvenile law." Hence, the competency procedures set forth in

Indiana Code Section 35–36–3–1 apply to a child alleged to be a delinquent child *unless* the juvenile code provides for such procedures. In support of its assertion that the juvenile code contains competency provisions, DMHA directs us to chapters 12 and 13 of the juvenile code, Indiana Code Section 31–32–12 and –13.

Indiana Code Section 31–32–13–1 provides in relevant part:

> Upon a juvenile court's motion or upon the motion of a child's parent, guardian, custodian, or guardian ad litem, a probation officer, a caseworker, the prosecuting attorney, the attorney for the county office of family and children, or any other person providing services to the child or the child's parent, guardian, or custodian, the juvenile court may issue an order:
>
> * * *
>
> (2) to provide a child with an examination or treatment under IC 31–32–12.

Indiana Code Section 31–32–12–1 provides:

> If the procedures under IC 31–32–13 are followed, the juvenile court may authorize mental or physical examination or treatment under the following circumstances:
>
> (1) If the court has not authorized the filing of a petition but a physician certifies that an emergency exists, the court:
>
> (A) may order medical or physical examination or treatment of the child; and
>
> (B) may order the child detained in a health care facility while the emergency exists.
>
> (2) If the court has not authorized the filing of a petition but a physician certifies that continued medical care is necessary to protect the child af-ter the emergency has passed, the court:
>
> (A) may order medical services for a reasonable length of time; and
>
> (B) may order the child detained while medical services are provided.
>
> (3) If the court has authorized the filing of a petition alleging that a child is a delinquent child or a child in need of services, the court may order examination of the child to provide information for the dispositional hearing. The court may also order medical examinations and treatment of the child under any circumstances otherwise permitted by this section.
>
> (4) After a child has been adjudicated a delinquent child or a child in need of services, the court may order examinations and treatment under IC 31–34–20 or 31–37–19.

DMHA also relies on Indiana Code Section 31–32–12–2, which provides in part that the "juvenile court may order temporary confinement for not more than fourteen (14) days ... to complete the mental or physical examination of a child."

▇▇▇ Whether the juvenile code allows a court to order a child examined for purposes of determining whether the child is competent to stand trial is a matter of statutory interpretation, which is a question of law reserved for the courts. *See Spears v. Brennan*, 745 N.E.2d 862, 869 (Ind.Ct.App.2001). When a statute is clear and unambiguous on its face, we may not interpret it. *Schafer v. Sellersburg Town Council*, 714 N.E.2d 212, 215 (Ind.Ct.App. 1999), *trans. denied*. Rather, words are to be given their plain, ordinary, and usual meaning unless a contrary purpose is clearly shown by the statute itself. *Id.* We engage in statutory interpretation only if the statutory language is ambiguous, or susceptible to more than one interpreta-

tion. *Foster v. Evergreen Healthcare, Inc.*, 716 N.E.2d 19, 25 (Ind.Ct.App.1999), *trans. denied.* One rule of statutory construction is that it is just as important to recognize what a statute does not say as it is to recognize what it does say. *Schafer*, 714 N.E.2d at 217.

Indiana Code Sections 31–32–12–1 and 31–32–13–1 are not ambiguous and, thus, we look to the plain and usual meaning of the words used therein. We agree with DMHA that these statutes allow for examination and treatment of a child. However, Indiana Code Section 31–32–12–1 does so only in certain circumstances. Under that statute, a juvenile court may order examination or treatment if, prior to the filing of a delinquency or CHINS petition, an emergency exists requiring examination and/or treatment. I.C. § 31–32–12–1(1), (2). In addition, following the filing of a delinquency or CHINS petition, the court may order an examination of the child to provide information for the *dispositional hearing.* I.C. § 31–32–12–1(3) (emphasis added). And under subsection 1(4) of the statute, after a child has been adjudicated a delinquent or CHINS, the court may order examinations or treatment under Indiana Code Sections 31–34–20 or 31–37–19, which are the articles governing dispositional decrees in delinquency and CHINS cases. None of the circumstances enumerated in Indiana Code Section 31–32–12–1 concern examination of a child for purposes of determining the child's competency to stand for delinquency adjudication.

■ Had the legislature intended to authorize juvenile courts to order examinations for the specific purpose of determining a child's competency, we can assume it would have expressed that intention within the statute. *See Schafer*, 714 N.E.2d at 217. Rather, Indiana Code Section 31–32–13–1 merely allows for examination and

treatment pursuant to chapter 12. Contrary to DMHA's assertion, the examination and treatment procedures contained in the juvenile code do not allow the juvenile court to order an examination to determine a child's competency to stand trial. Because the procedures governing criminal trials apply in all matters not covered by juvenile law, I.C. § 31–32–1–1, we conclude that the juvenile court did not err when it resorted to Indiana Code Section 35–36–3–1 for the purpose of ordering competency evaluations for K.G., D.G., D.C.B., and J.J.S.

DMHA also contends that the juvenile court improperly invoked Indiana Code Section 35–36–3–1 because, according to DMHA, the court's true purpose for ordering the competency evaluations was to obtain placements for the children, not for the purpose of helping the children attain competency so that they could assist in their defenses. In support, DMHA directs us to the court's March 19, 2002 order, which states in part:

> The Court has now determined that time requires that the Court make its order and that the division of mental health will resist any order committing the [children] to the division of mental health. Since there is an impasse, and *this Court will not allow the [children] to be harmed by their placement in an inappropriate or unacceptable program which will not address their mental health and other needs,* the Court makes the following order . . . .

(Emphasis added). By focusing on the emphasized portion of a single sentence in the court's order, DMHA claims that this statement shows the court was concerned with finding placements for the children, not with their competency to stand trial. We must disagree. Not only is DMHA's argument speculative, but our review of the March 19 order in its entirety reveals

that the court was *not* relying on Indiana Code Section 35–36–3–1 for the sole purpose of finding placements for the children. Rather, as the court explained in its order:

> The Court notes that, in each of the JD cause numbers listed above, there was filed on behalf of the Respondents a petition alleging the respective Respondents did not have the ability to stand for adjudication because of incompetency. Further, in responding to that petition, the Court had each of the Respondents evaluated and they have been determined by competent medical professionals, pursuant to I.C. 35–36–3–1 et seq., to be incompetent to stand for adjudication in the Court.

The court further noted that, at the time of the order, each of the children was placed out of his or her home, at least in part, "because of the information available to the Court about [the children's] ability to understand and assist in their defense."

*Id.*[5] Accordingly, we reject DMHA's assertion that the court utilized Indiana Code Section 35–36–3–1 for purposes other than to determine the children's competency to stand trial.[6]

In a related argument, DMHA notes that the juvenile court placed two of the children at Lutherwood and the other two at Options Treatment Center. DMHA contends that neither the court nor the appellees has asserted that these facilities cannot address the children's mental health needs. DMHA further suggests that these facilities could perform competency evaluations and provide treatment if necessary. But DMHA's argument ignores the fact that the children filed petitions with the juvenile court alleging their inability to understand the delinquency proceedings and assist with their defenses. As we hold today, the statute which provides the court with authority to order competency evaluations is Indiana Code

---

5. D.G. and D.C.B. were placed at Lutherwood pursuant to CHINS proceedings. The chronological case summaries show that their placements there continued pending the court's final order regarding their competency petitions.

6. DMHA also complains that, if the court's intent was to find placements for the children, it had alternatives available other than the adult criminal code competency statute. For example, DMHA points out that two of the children had been placed pursuant to CHINS proceedings and the other two could have been placed pursuant to Indiana Code Section 31–32–12–1. DMHA also claims that the court could have commenced commitment proceedings under Indiana Code Section 12–26–8–1, which concerns commitment of mentally ill children. Even though we have already determined that placement was not the court's primary concern in this case, and that the juvenile code does not allow a court to order competency evaluations, we note that chapter 12 of the juvenile code does not authorize commitment of mentally ill juveniles under Indiana Code Section 12–26. *See* I.C.

§ 31–32–12–2. Moreover, the issue before Judge Payne was not whether the children were mentally ill but whether they lacked the ability to understand the delinquency proceedings and assist in their defenses. *See Wallace v. State*, 486 N.E.2d 445, 452–53 (Ind.1985) (explaining, in adult criminal context, difference between statutory judicial proceedings for determining competency to stand trial and involuntary civil commitment of mentally ill defendant), *cert. denied*, 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 723 (1986). And if the DMHA determines that the juveniles will not attain competency, then just as with adult criminal defendants, the DMHA shall initiate commitment proceedings for the juveniles under I.C. 12–26–8–1. *See* Ind.Code § 35–36–3–3 (providing if, after ninety days following admission to psychiatric institution, defendant does not have substantial probability of attaining competency, the DMHA shall initiate commitment proceedings) and Ind. Code § 35–36–3–4 (stating the DMHA shall initiate commitment proceedings where defendant has not attained competency within six months after date of admittance to psychiatric institution).

Section 35–36–3–1. Under that statute, if the court finds that the defendant or child lacks the ability to understand the proceedings and assist in his or her defense, the court "shall delay or continue the trial and order the defendant committed to the division of mental health, to be confined by the division in an appropriate psychiatric institution." I.C. § 35–36–3–1(b). If and when the child attains the ability to understand the proceedings and assist with his or her defense, the division of mental health must certify that fact to the court, and the court must then enter an order directing the child to be returned for trial. Ind.Code § 35–36–3–2. Therefore, whether Lutherwood and Options Treatment Center can perform competency evaluations and determine whether the children attain competency at some point in the future misses the point. The governing statute that sets forth competency procedures requires that once a person is determined to lack competence, the court *shall* order that person committed to the division of mental health. I.C. § 35–36–3–1(b). The juvenile court in this case complied with the statute.[7]

DMHA's final argument on this issue is that the court could have properly invoked the adult competency statute *if* the State had obtained a waiver of the juvenile court's jurisdiction under Indiana Code Section 31–30–3–1. But we have already concluded that because the juvenile code does not contain competency procedures, it was proper for the court to rely on Indiana Code Section 35–36–3–1 to order evaluations and treatment. Moreover, not every child alleged to be a delinquent is subject to the waiver statute. Rather, under Indiana Code Section 31–30–3–2, the juvenile court may waive jurisdiction only when certain specific criteria are met. For example, the child must be at least fourteen years of age when he allegedly committed the act and must be "beyond rehabilitation under the juvenile justice system." I.C. § 31–30–3–2(2), (4). Thus, DMHA's suggestion that waiver out of juvenile court is required before the adult competency procedures apply to juveniles lacks merit. In sum, we hold that the adult competency statute, I.C. § 35–36–3–1, applies in juvenile delinquency proceedings.

**Issue Two: Separation of Powers**

DMHA also argues that the court violated the doctrine of separation of powers because the orders issued in March and April 2002 direct DMHA, a department of the executive branch, to undertake a responsibility not included in that department's statutory mandate. We must disagree.

Article III, Section 1 of the Indiana Constitution provides: "The powers of Government are divided into three separate departments; the Legislative, the Executive including the Administrative, and the Judicial; and no person, charged with official duties under one of these departments, shall exercise any of the powers of

---

7. Although we do not have a complete record of the juvenile court's negotiation efforts, the court's orders of March 19 and April 25 show that the court attempted to negotiate the children's placement after the competency evaluators had determined that they lacked the ability to understand the delinquency proceedings. It is also apparent from the orders that DMHA opposes the children's placement within its agency, at least in part, because "it does not currently have available appropriate facilities or programs to meet the mental health needs" of the children. With this knowledge, the juvenile court was between a rock and a hard place. In the end, the court made the reasonable decision to follow the clear language of the adult competency statute by ordering: (1) that the children be committed the division of mental health, but (2) that the children nevertheless remain in their current placements pending appeal.

another, except as this Constitution expressly provided." As this court stated in *Phelps v. Sybinsky,* 736 N.E.2d 809, 815 (Ind.Ct.App.2000), *trans. denied:*

> Our supreme court has explained the separation of powers provision as being the keystone of our form of government and has required that its provisions be strictly construed. The true interpretation of this separation of powers is, that any one department of the government may not be controlled or even embarrassed by another department, unless so ordained in the Constitution. The separation of powers doctrine recognizes that each branch of the government has specific duties and powers that may not be usurped or infringed upon by the other branches of government.

(Citations omitted).

In support of DMHA's assertion that the court's orders require it to perform a responsibility that is beyond its statutory mandate, DMHA directs us to Indiana Code Section 12–21–5–2, which provides:

> The division is responsible for the following:
>
> (1) The planning, research, and development of programs and methods for the education and treatment of emotionally disturbed children.
>
> (2) The coordination of governmental services, activities, and programs in Indiana relating to such children.
>
> (3) The administration of the state supported services concerned with such children.
>
> (4) The preparation of the annual report required by IC 7.1–6–2–5.

DMHA contends that, by statute, it is only responsible for emotionally disturbed chil-

dren.[8] And because K.G., D.G., D.C.B., and J.J.S. are mentally retarded, not emotionally disturbed, the court's orders require it to perform responsibilities outside of its statutory mandate.

■ Regardless of whether these four children are emotionally disturbed, DMHA's argument is fatally flawed in that it assumes the adult competency statute does not apply to juveniles. Because we have held otherwise, we need look no further than Indiana Code Section 35–36–3–1 for statutory authority justifying the court's orders. We agree with Child Advocates, Inc.'s statement in its brief that, because the adult competency statute applies equally to juveniles in delinquency proceedings, "the underlying reasons for the competency determinations regarding the four children in question is irrelevant." Stated differently, if a criminal defendant who is mentally retarded and not competent to stand trial *shall* be committed to the DMHA for treatment, then a juvenile who is mentally retarded and not competent to stand for adjudication *shall* likewise be committed. *See* I.C. § 35–36–3–1. We therefore reject DMHA's argument that the court's orders violated the separation of powers doctrine.

### Issue Three: DMHA's Financial Responsibility

Finally, DMHA asserts that, even assuming the adult competency statute applies to juveniles, DMHA cannot be held financially responsible for the costs associated with treating the juveniles. In support, DMHA directs us to *In re Garrett,* 631 N.E.2d 11 (Ind.Ct.App.1994), *trans. denied.* In *Garrett,* the department of mental health[9] appealed a dispositional or-

---

8. Our legislature has not defined "emotionally disturbed children" as that phrase is used in Indiana Code Section 12–21–5–2.

9. We note that the former department of mental health has been renamed the Division of Mental Health and Addictions.

der in which the juvenile court ordered a child adjudicated a delinquent a ward of the department and made the department financially responsible for the costs of the juvenile's mental health services. But the issue in that case was whether the court misapplied the statute governing dispositional decrees, formerly Indiana Code Section 31–6–4–15.9, which authorizes award of wardship of a juvenile delinquent only to specific governmental entities and to "any person or shelter care facility." Because the exclusive means for court-ordered wardship is set forth by statute, and the department is neither one of the governmental entities set forth therein nor a "person or shelter care facility," we concluded that the court lacked authority to commit the juvenile to the department.[10]

This court in *Garrett* also addressed the issue of financial responsibility which DMHA raises here. In particular, after having concluded that the court lacked authority to order the juvenile a ward of the department, we went on to address the portion of the order in which the court expressly stated that the department would be responsible for the costs of any mental health services. *Garrett*, 631 N.E.2d at 13. In holding that the depart-

ment was not financially responsible for the costs, we stated:

> As this district noted in two cases decided on the same day, [the department] is not responsible for mental health costs in involuntary commitment cases. Similarly, in delinquency cases, [the department] is not the responsible party for mental health costs of juveniles. [The juvenile code] directs that the costs of services be paid by the county. However, a delinquent child's parents are financially responsible for any services ordered by the court and must reimburse the county unless the court determines that they are unable to pay for them, payment would be an unreasonable hardship on the family, or justice would not be served. Accordingly, we reverse the trial court's order that [the department] pay the costs of [the juvenile's] mental health services.

*Id.* (citations omitted).[11]

Here, unlike in *Garrett*, the juvenile court did not enter a specific order that DMHA is responsible for the cost of the children's treatment. The children argue that DMHA's contention regarding financial responsibility is premature because "no one has asked [it] to pay for anything." In its reply brief, DMHA does not respond

---

**10.** To the extent that DMHA relies on *Garrett* to support its claim that the court lacked authority to order K.G., D.G., D.C.B., and J.J.S. committed to the DMHA for treatment, that case is distinguishable. First, the court's order in *Garrett* was a dispositional order entered *after* the juvenile had been adjudicated a delinquent and, thus, the court was required to comply with the statutes governing dispositional orders. Here, none of the children have been adjudicated delinquents, and the court's orders were not dispositional orders. Rather, the orders were relevant to the children's motions claiming that they were not competent to stand for adjudication. As we have already determined, it was proper for the court to issue the orders pursuant to the adult competency statute.

**11.** Indiana Code Section 31–40–1–2 is the current juvenile code provision that addresses the county's responsibility to pay for services ordered by the juvenile court. That statute provides, in relevant part, that the county shall pay from the family and children's fund the cost of any services ordered by the juvenile court for any child or the child's parent, guardian, or custodian, other than secure detention. I.C. § 31–40–1–2(a)(1). Additionally, the child's parent, guardian, or custodian is generally required to reimburse the county for such costs unless the court finds that the parent is unable to pay or that justice could not be served by ordering such payment. Ind.Code § 31–40–1–3.

to the children's argument that the issue of financial responsibility is not ripe for appellate review. We agree with the children that DMHA's invitation to us to decide that it is *not* responsible is premature.

 The doctrine of ripeness involves the timing of judicial review and the principle that judicial machinery should be conserved for problems that are real and present or imminent, not squandered on problems that are abstract or hypothetical or remote. *In re Paternity of M.G.S.*, 756 N.E.2d 990, 1004 (Ind.Ct.App.2001), *trans. denied.* In this case, we have no express order from the juvenile court ordering DMHA to pay for the juveniles' care pending their admission to a state facility. *Cf. In re Garrett*, 631 N.E.2d at 12 (in dispositional order, juvenile court ordered juvenile ward of DMHA and ordered DMHA to pay cost of placement); *In re Commitment of T.J.*, 614 N.E.2d 559, 560 (Ind.Ct. App.1993) (trial court ordered DMHA to assume all financial responsibility for minor child following involuntary commitment); *In re Commitment of A.N.B.*, 614 N.E.2d 563, 564 (Ind.Ct.App.1993) (trial court ordered DMHA to assume all financial responsibility for sixteen-year-old child following involuntary commitment). Accordingly, because there is no immediate dispute over whether DMHA must bear the costs associated with the juveniles' care, we conclude that the issue is not ripe for appellate review.

## CONCLUSION

We conclude that juveniles have a fundamental due process right to a competency determination in delinquency proceedings. We further conclude that the adult competency statute, Indiana Code § 35–36–3–1, authorizes the juvenile court: (1) to order that K.G., D.G., D.C.B., and J.J.S. submit to competency evaluations to determine whether they are competent to stand for adjudication, and (2) to order the children committed to the DMHA for treatment. Finally, we conclude that the issue of DMHA's financial responsibility for the cost of the services ordered by the juvenile court is not ripe for review.

Affirmed.

FRIEDLANDER, J., and VAIDIK, J., concur.