921 A.2d 258

**In re LAKESHIA M.**

**No. 96, Sept. Term, 2006.**

Court of Appeals of Maryland.

April 16, 2007.

Allison E. Pierce, Assistant Public Defender (Nancy S. Forster, Public Defender, Adrienne Dixon, Rule 16 Student Attorney, on brief), Baltimore, MD, for Appellant.

Shannon E. Avery, Assistant Attorney General (Douglas F. Gansler, Attorney General of Maryland, on brief), Baltimore, MD, for Appellee.

Argued before RAKER, CATHELL, HARRELL, BATTAGLIA, GREENE, and LAWRENCE F. RODOWSKY (Retired, specially assigned) and ALAN M. WILNER (Retired, specially assigned), JJ.

LAWRENCE F. RODOWSKY, J.

The issue presented by the parties in this delinquency case is whether the juvenile respondent triggered the requirement for a pre-adjudicatory hearing, mental competency evaluation, as that requirement was imposed by Maryland Code (1974, 2002 Repl.Vol., 2005 Cum.Supp.), § 3–8A–17.1 of the Courts and Judicial Proceedings Article (CJ).[1] We shall hold that the juvenile sufficiently raised the issue of competency to oblige

1. Unless otherwise noted, reference to CJ, Title 3, Subtitle 8A are to Maryland Code (1974, 2002 Repl.Vol., 2005 Cum.Supp.).

the court to make a finding whether to order an evaluation. Because this was not done, we shall vacate the adjudication of delinquency and the disposition.

On November 16, 2005, appellant, Lakeshia M., was age fifteen. That evening her stepfather, Steven D., entered the home and found Lakeshia sitting in a recliner in the living room with a butcher knife lying on each leg. An argument ensued, during which Lakeshia "took a swipe" at Steven D. with one of the knives. She was close enough to him at that time that he had to back up to avoid the blade. He called the police.

The State filed a juvenile petition against Lakeshia on December 20, 2005, in the Circuit Court for Washington County. The adjudicatory hearing was held on January 25, 2006.[2]

That hearing opened with the following request by counsel for Lakeshia.

"Your Honor, this is going to be a Public Defender request for a postponement. Her mother came in to qualify late, had her daughter call me yesterday. She also is diagnosed with the highest level of bi-polar disorder. It's something I need to look into. I can't really, she can't really assist me with her mental health status now. There's a current CINA case, her CINA social worker is here. She's under the jurisdiction of Judge Boone. I'd ask to postpone this matter thirty days to allow me to meet with her, review discovery and discover this diagnosed . . .

"THE COURT: She's out of control."

In response, counsel said that Lakeshia's mother believed that, if the court were to order the juvenile to take her medicine, she would remain properly medicated. Counsel

---

**2.** It appears from the record at the adjudicatory hearing that, after the assault, Lakeshia was taken to Brook Lane, a private facility in Hagerstown for the treatment of mental illnesses. She stayed there for two weeks. There is no evidence in the record in this case that the court had received and reviewed an evaluation, if any, from Brook Lane prior to holding the adjudicatory hearing.

further advised that, because of the pending CINA action, the social worker assigned to Lakeshia's case could petition the court at any time "for shelter," if that became necessary. The court denied the request for a continuance.

Counsel, however, stood his ground.

"[Defense Counsel]: Your Honor, then *I'd have to note competency because she can't communicate with me about this process.* Your Honor, you can talk to her mother, you can talk to her . . .

"THE COURT: Well you said that she was taking her medication.

"[Defense Counsel]: With respect to her ability to conform, anger issues, but I don't have a mental health background at all. *When I talked to her yesterday, she wasn't able to explain to me the basic function of my role, the prosecutor's role.* I let her know I'd talk to her today. I've talked to her today. I've talked to her DSS worker. And I let her know that I'd be seeking to postpone it to make that evaluation. At this point, there's nothing I can do except ask for that postponement. *I'm not comfortable not asserting competency.* After having her meet with the social worker from my office, I may, based on what the mother told me in the CINA case, *it screams out competency issues. The highest level of bi-polar disorder.* I've never heard that before.

"THE COURT: Does she admit or deny her participation in the assault?

"[Defense Counsel]: Your Honor, I'd have to deny on her behalf. I don't think, I deny and I'd assert competency and ask that the State meet its burden with respect to her competency for this hearing."

(Emphasis added).

The State took the position that competency had not been formally raised. It advised the court that, if a continuance were granted, it would seek a shelter order because there was a bed immediately available at the Thomas B. Finan Center,

where medication and competency issues could be addressed. The court observed:

"Of course, that was the recommendation by the Department even if we got to disposition, was to get her to Finan and get some intervention as well as a psychological evaluation."

When the court further commented, "I mean, that's what's necessary, and why delay it," defense counsel replied, "[B]ecause I don't think she's capable of being adjudicated."

The court said that the matter could be bifurcated, with the court first determining whether Lakeshia committed acts that would be criminal offenses if perpetrated by an adult, and that "[a]gency is another issue." The court repeated that "[s]he's out of control, and she needs to be out of the community into a professional environment that she'll either respond to or she won't." After further colloquy, the court again denied the "request for a continuance" and directed that the matter proceed on the bifurcated issue and not on the issue of competency.

A shelter review hearing was held on February 15, 2006. Finan Center had been unable to complete their psychological evaluation because Lakeshia was "so out of control." Consequently, the Department of Juvenile Services (DJS) had no plan and no recommendation. Although the prosecutor initially suggested transfer to Crownsville Hospital, she learned in the course of the hearing that an independent psychological evaluation could be done by a Dr. Kane in Frederick. The court, apparently referring to an interim report from the Finan Center that is not in the record, observed:

"The Finan people say it's all manipulative. Everything that she's doing is her own selfishness and a manipulation. There is a history at Brook Lane. I think we do need to have an independent evaluation[.]"

The court placed Lakeshia in the custody of her mother, subject to community detention and "intensive" supervision by DJS. There were numerous conditions, including that she cooperate with Dr. Kane in his evaluation.

The disposition hearing was held on April 5, 2006. Dr. Kane had submitted an evaluation that the State considered to be "very thorough." [3] The disposition was probation for an indefinite period in the custody of her mother, but supervised by DJS and subject to numerous conditions.

Lakeshia timely appealed. This Court issued the writ of certiorari on its own motion, before consideration of the matter by the Court of Special Appeals. *In re Lakeshia M.,* 396 Md. 11, 912 A.2d 647 (2006).

Appellant presents two questions:

"1. Whether the trial court erred when it refused to stay the adjudicatory hearing and order a competency evaluation after defense counsel asserted that he had concerns about the appellant's competency?

"2. Whether the trial court abused its discretion when it denied defense counsel's motion for a continuance?"

### Legal Background

■ "It is well established that the Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial." *Medina v. California,* 505 U.S. 437, 439, 112 S.Ct. 2572, 2574, 120 L.Ed.2d 353, 359 (1992). Lakeshia submits that "[a]lthough [Maryland appellate courts have not] addressed the issue, numerous courts from across the country have recognized that juveniles have a similar fundamental, due process right not to be adjudicated delinquent if they are mentally incompetent." Brief of Appellant at 11.[4] Because we rest our decision on

---

3. In the course of this hearing, the court, speaking to Lakeshia, observed:

"We have all kinds of reports and everything, and I know that there was a lot of effort, originally, through your defense counsel, that you didn't know what you were doing, and you were incompetent, and that you had all of these other problems. Well, I think, quite frankly, you know exactly what you're doing and can change and can be productive if you want to."

4. In support of this proposition, appellant cites: *State ex rel. Dandoy v. Superior Court,* 127 Ariz. 184, 187, 619 P.2d 12, 15 (1980); *Golden v.*

statutory grounds, we do not reach the constitutional level of analysis.

When the delinquency petition was filed in the instant matter, there was no Maryland statute directly addressing the competence of a juvenile to stand trial for a delinquent act. Chapter 580 of the Acts of 2005 enacted substantial changes to CJ Title 3, Subtitle 8A, "Juvenile Causes—Children Other Than CINAs and Adults." [5] Effective December 31, 2005, this legislation added, as defined terms, "Incompetent to proceed" and "Competency hearing." The former means

"that a child is not able to:

"(1) Understand the nature or object of the proceeding; or

"(2) Assist in the child's defense."

CJ § 3–8A–01(q). The latter means

"a hearing under this subtitle to determine whether a child alleged to be delinquent is mentally competent to participate in a waiver hearing under § 3–8A–06 of this subtitle, an adjudicatory hearing under § 3–8A–18 of this subtitle, a

---

*State*, 341 Ark. 656, 659–61, 21 S.W.3d 801, 803 (2000); *James H. v. Superior*, 77 Cal.App.3d 169, 173–75, 143 Cal.Rptr. 398 (1978); *In the Matter of W.A.F.*, 573 A.2d 1264, 1266 (D.C.1990); *In the Interest of S.H.*, 220 Ga.App. 569, 570–71, 469 S.E.2d 810, 811 (1996); *In the Interest of Causey*, 363 So.2d 472, 476 (La.1978); *In the Interest of E.V.*, 190 Ill.App.3d 1079, 1082–83, 138 Ill.Dec. 354, 547 N.E.2d 521, 523 (1989); *In the Matter of K. G.*, 808 N.E.2d 631, 635 (Ind.2004); *In the Matter of Carey*, 241 Mich.App. 222, 229–31, 615 N.W.2d 742, 746–47 (2000); *In the Matter of the Welfare of S.W.T.*, 277 N.W.2d 507, 511 (Minn.1979); *In the Matter of Two Minor Children*, 95 Nev. 225, 228–31, 592 P.2d 166, 168–69 (1979); *In re Bailey*, 150 Ohio App.3d 664, 667–68, 782 N.E.2d 1177, 1179 (2002); *In re J.M.*, 172 Vt. 61, 67–69, 769 A.2d 656, 662 (2001). The State does not challenge this proposition.

**5.** Section 2 of Chapter 580 provided that

"beginning June 1, 2005, the Department of Health and Mental Hygiene, in coordination with other appropriate State agencies, shall work with the Judiciary to develop training for local judges, juvenile masters, and representatives of relevant local agencies on services available through the public mental health system and the developmental disabilities system and on other available services."

V   Laws of Maryland 2005 at 3311.

disposition hearing under § 3–8A–19 of this subtitle, or a violation of probation hearing."

CJ § 3–8A–01(i).

Lakeshia bases her argument primarily on new § 3–8A–17.1, as enacted in 2005. It read:

"(a) *In general.*—(1) At any time after a petition alleging that a child has committed a delinquent act is filed with the court under this subtitle, the court on its own motion, or on motion of the child's counsel or the State's Attorney, shall stay all proceedings and order an evaluation of the child's mental condition and developmental levels if the court finds that:

"(i) There is probable cause to believe that the child has committed the delinquent act; and

"(ii) There is reason to believe that the child may be incompetent to proceed with a waiver hearing under § 3–8A–06 of this subtitle, an adjudicatory hearing under § 3–8A–18 of this subtitle, a disposition hearing under § 3–8A–19 of this subtitle, or a violation of probation hearing.

"(2) An evaluation ordered under paragraph (1) of this subsection shall be performed by a qualified expert.

"(3) This subsection may not be construed to prohibit the State or the child from calling other expert witnesses to testify at a competency hearing.

"(b) *Service of notice of motion.*—Any motion questioning the child's competency to proceed, and any subsequent legal pleading relating to the child's competency to proceed, shall be served on the child's counsel, the State's Attorney, the Department of Juvenile Services, and the Department of Health and Mental Hygiene." [6]

---

**6.** Chapter 387 of the Acts of 2006, effective October 1, 2006, amended subsection (a)(1) by adding after "order" the words, "that the Department of Health and Mental Hygiene or any other qualified expert conduct" and by substituting "competency to proceed" for "mental condition and development levels."

Appellant submits that the representations of her counsel to the court were sufficient to trigger the court's duty to proceed under CJ § 3–8A–17.1.

The State initially contends that the appellant waived any right to a competency evaluation because she moved only for a continuance. The State further argues that the trial court acted within its discretion in bifurcating the case. Because Lakeshia presented no evaluation at the adjudicatory hearing, it is said that the court appropriately proceeded with adjudicating delinquency. The State construes the court's statement that "[a]gency is another issue" to mean that "questions relating to Lakeshia's mental status could be addressed at disposition." Brief of Appellee at 14.

### Waiver

We shall not reject, on the ground of waiver, the argument submitted by appellant. The State reads appellant's request too grudgingly. The reason assigned for the requested continuance was to enable the defense to obtain an evaluation of competence. It appears that counsel was seeking an expert opinion on which to base the lack of competence argument. Then, when the court first ruled that the motion was denied, defense counsel directly alleged that Lakeshia was not competent. He proffered that, in his interview of his client, she "wasn't able to explain to [him] the basic function of" defense counsel or the role of the prosecutor. Lakeshia's mother had informed counsel that the child suffered from "[t]he highest level of bi-polar disorder."

Section 3–8A–17.1(b) does not express a legislative intent that only written motions "questioning the child's competency to proceed" are to be considered. Although subsection (b) addresses motions that are to be served, there is no language in the statute limiting motions to those that are written. There is no indication in the statute that the historic circuit court practice of allowing oral motions in open court is inapplicable to juvenile causes, despite Maryland Rule 1–101(b) (excluding juvenile causes from circuit court civil rules). *Cf.* Rule 2–311(a) ("An application to the court for an order shall be by

motion which, unless made during a hearing or trial, shall be made in writing [.]"). The purpose of subsection (b) of § 3–8A–17.1 is to expand service of a written motion beyond the immediate parties to the juvenile cause so as to include, as well, the two state agencies identified in subsection (b). In any event, a written motion by the juvenile is not required, because the issue of the child's competency can be raised by the court on its own motion. § 3–8A–17.1(a).

We hold that Lakeshia effectively moved for a competency evaluation.

### Role of the Court

Under § 3–8A–17.1(a), if a competency issue has been generated, the circuit court must first make two determinations, (1) whether there is "probable cause to believe that the child has committed the delinquent act" and (2) whether there is "reason to believe that the child may be incompetent to proceed[.]" If the court finds that those factors are present, the court does not proceed to determine competence; rather, it "shall stay all proceedings and order an evaluation of the child's mental condition[.]" Next, "[t]he court shall set and may change the conditions under which the examination is to be conducted." § 3–8A–17.2. The examination is to be conducted by a "qualified expert," who is to opine on competence. § 3–8A–17.3(a)(1).[7]

■ Here, the State had ample evidence to demonstrate probable cause that Lakeshia had committed the assault, although that evidence was introduced as part of the adjudicatory hearing. The court, however, never made a determination whether there was "reason to believe" that Lakeshia may

---

**7.** CJ § 3–8A–01(z) defines "qualified expert" as

"a licensed psychologist or psychiatrist who has expertise in child development, with training in forensic evaluation procedures through formal instruction, professional supervision, or both and who is:
  "(1) Familiar with the competency standards contained in this subtitle; and
  "(2) Familiar with the treatment, training and restoration programs for children that are available in this State."

be incompetent to proceed. Defense counsel's representation that Lakeshia did not understand his role, or that of the prosecutor, and that she suffered from the highest level of bi-polar disorder were sufficient to draw into question the presumption of competence, to require an inquiry by the court, and to require a finding on whether there was "reason to believe" that Lakeshia may be incompetent to proceed.

What seems to have happened here is that the trial court focused on getting Lakeshia, as promptly as possible, to the then available bed at the Finan Center, resulting in a violation of the new legislation.[8]

Because the circuit court proceeded to an adjudication after competency had been raised, but without determining whether there was "reason to believe" that Lakeshia may be incompetent, we vacate the judgment and remand this matter for further proceedings, consistent with this opinion.[9]

**JUDGMENT OF THE CIRCUIT COURT FOR WASHINGTON COUNTY VACATED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY WASHINGTON COUNTY.**

---

**8.** The State does not contend that § 3–8A–17.1 does not apply to the instant matter, which was instituted before the effective date of the new legislation. This is an apparent recognition that the statute is procedural.

**9.** This disposition makes it unnecessary to consider appellant's second argument.